(Decided March 24th, 1896.)

---

# HENRY BAUMGARDNER AND JOHN D. SKILES *vs.* JAMES B. FOWLER AND KATHERINA BURGER.

*Tax Sales—Effect of Ratification—Defects in Notice of Sale—Bill to Remove Cloud from Title by Owner of Land Sold for Taxes.*

A local statute of Garrett County provides that when land is sold for non-payment of taxes, the ratification of the sale by the Court shall be conclusive as to the regularity of the proceedings, except in cases of fraud and collusion. *Held*, that the ratification of a tax sale where the essential requirements of the statute as to notice have not been complied with, cannot be considered as conclusive, since it is not competent for the Legislature to deprive a man of his property by proceedings which are without warrant of law, or to make another's claim to it conclusive of its own validity.

A statute directed that when property is sold for non-payment of taxes, the sale should be advertised by handbills set up on or near the property and at certain other places. Plaintiff's property was

sold for taxes, but such notice was not given and plaintiff had no knowledge of the sale until after its ratification by the Court. *Held*, that the failure to give the required notice was not a mere irregularity, but a vital defect, and that the purchaser acquired no title.

Where the lands sold for taxes are uncultivated and unoccupied, and the purchaser at the tax sale which is void for irregularities has not taken possession, the owner may maintain a bill to remove the cloud from his title caused by such sale, although he has only the constructive possession resulting from his legal ownership.

Appeal from a decree of the Circuit Court for Garrett County (STAKE, J.), dismissing appellants' bill of complaint, which asked to have a certain tax deed annulled. The facts appear in the opinion of the Court.

The cause was submitted to BRYAN, McSHERRY, FOWLER, BRISCOE and PAGE, JJ.

*R. T. Semmes* and *J. T. Mitchell* for the appellants.

The answer denies the material allegations of the bill, and alleges the performance of all the requisite preliminaries, and as matter of defence declares the defendants to be in possession of the premises and denies the possession of the plaintiffs, and claims that by reason of the failure of plaintiff to come in and redeem within six months of the sale they are now too late to take advantage of the errors alleged, if in fact any exist. The pleadings raise three questions: First. Are the plaintiffs properly before the Court with their bill *quia timet?* Second. If they are, is it too late to inquire into the regularity of the sale. Third. If they are rightfully before the Court, and are not too late, was the sale in this case regular?

*First.*—In order to maintain a bill to remove a cloud upon the plaintiff's title, it should · allege that the plaintiff is in possession, and that the existence of the deed interferes with his rights of possession and authority over the property, such as sales, &c. This is alleged in the bill and sustained by the proof of title and payment of taxes for years.

*Lyon* v. *Alley*, 130 U. S. 177.   It is well settled by the decisions of this Court and the State Courts, that after land has been sold and a conveyance of some sort made to the purchaser, Courts of Equity have inherent jurisdiction to give relief to the owner, against vexatious litigation and threatened injury to the market value of the land, by removing the cloud which such illegal sale and the illegal claim arising from it, may cast upon the title.   See also *Sharpleigh* v. *Surdam*, 1 Flip U. S. 472 ; *Pixley* v. *Higgins*, 15 Cal. 149.

*Second.*—If we are rightfully in Court, is it too late to inquire into the regularity of this sale ?   The defendants claim that because of the language of the Act of 1890, chapter 566, sec. 54, which is as follows : " When such sale shall have been finally ratified by the Court, or one of the Judges thereof, as herein provided, the order of ratification shall be conclusive as to the regularity of the treasurer's proceedings therein, and of said sale, and shall not be open to inquiry, except in case of *fraud or collusion* in said proceedings and sale on the part of or between the treasurer and purchaser ;" that after the ratification of sale we cannot attack the proceedings, but must redeem within six months or lose our property.   Statutes which attempt to make deeds *conclusive* evidence of matters vitally essential to the valid exercise of the taxing power are void. *Marx* v. *Hawthorn*, 148 U. S. 172.

The notice was given by the Treasurer in 1891, by publication in the newspapers, but not by handbills posted in at least five places in each district, even for that year.   How could the levy become a lien without these notices, themselves part of the due process of law, and mandatory at that ?   *Lyon* v. *Alley*, 130 U. S. 177.   By section 50 of the same Act it is provided that the Treasurer shall during the first week in December in each and every year, give notice to all the delinquent taxpayers of said county, by advertisements inserted in two newspapers published in said county, and by handbills posted in five of the most public

places in each election district of said county, and at the Court-house door, warning *them*, and *each of them*, that the payment of all taxes then due and in arrears, will be enforced by advertisement and sale, unless the same are paid before the first day of January then next following. The testimony shows that a notice purporting to comply with this provision of the law was published in the newspapers but nowhere else; and we contend that even if the notices therein given were published as required by law, they are not such notices as fulfill the law. To say that they are sufficient is to accuse the Legistature of an absurdity, as the provisions embodied in it is part of the local law of Garrett County, of which the public are bound to take notice. We contend that the notice intended to be published must name the delinquent taxpayers, and that not having contained the names there was no notice in fact given; and to sustain our contention we refer to *Mara* v. *Hawthorn,* 148 U. S. 171.

Third.—The sale in this case was not regular. It was the duty of the Treasurer, under this section, to post handbills in five of the most public places in each election district in said county, to be designated or selected by him, when in fact he admits on cross-examination that he posted them in only a few of said districts, and did not post any at all in Election District No. 4, where the land is located, although he says he sent some there, but did not know positively that they were posted up at all in five of the most public places, but only presumes so, when it was his duty to know whether they were. The non-compliance with the provisions in these two sections clearly makes the sale void, as being without authority of law. Had the requirements of the preceding sections been fully complied with, the next step to be taken by the Treasurer before attempting to make a sale at all of said land was to comply with the provision in section 51, and ascertain, as it was his duty, whether said real estate was susceptible of division, so that a part thereof would sell for enough to pay the taxes and

all costs, and in his discretion, employ a surveyor to divide the same, etc.  The Treasurer, Mr. Stanton, admits in his testimony that part of the lands sold, " Factories " and " Mill Seat," was susceptible of division ; and he further admits that he did not make any effort to sub-divide any or either of said tracts of land, although the tract " Factories " contains 1016 and ¼ acres, and " Mill Seat " 597 and ½ acres, and valued respectively at $4,065.00 and $1,195.00, as will be shown by certified copy of assessment filed, which is made part of the evidence in the case.  If the law did not require said land to be divided when it was susceptible of division, as in this case, " in the absence of any statute limiting the officer's right or power in this particular, a restriction to the quantity requisite to pay the sum due, would be intended by law."  *Guisebert* v. *Etchison*, 51 Md. 478 ; *Margraff* v. *Cunningham*, 57 Md. 585 ; *Dyer* v. *Boswell*, 39 Md. 471 ; *Brison* v. *Tassiter*, 81 Ga. 40 ; *Cooley on Taxation* (2nd ed.) 490 ; *25 Am. and Eng. Encyclopædia of Law*, 384, 385, note 2.

And a sale of several pieces of land, separately assessed, or in fact distinct, as in this case, en masse for a gross sum, is irregular and cannot be upheld, and a deed showing this course has been pursued, is void upon its face.  *Nason* v. *Ricker*, 63 Me. 381 ; *Morton* v. *Harris*, 9th (Watts Pa.) 319 ; *State* v. *Richardson*, 21 Mo. 420 ; *Keene* v. *Barnes*, 29 Mo. 377.  Each parcel of a person's land separately assessed is only liable to sale for its own specific tax.  *State* v. *Hand*, 41 N. J. L.

*Gilmor S. Hamill*, for the appellees.

The appellees will contend that this is simply a bill to remove a cloud from the supposed claim of title of the appellants.  They allege that they have the title as well as the possession, but the answer positively denies this allegation, and there is absolutely no proof on the part of the plaintiffs that shows this allegation to be true.  The testimony (what little there is in the case) shows that the plaintiffs don't even

know where the lands are located, and there is no testimony
to show that anyone holds the lands for them, and in the
absence of this proof it certainly cannot be denied that the
Treasurer's deed as made to the appellees gave them a legal
title to the premises, and tolls the right of entry with it.
The only testimony there is in the case on the part of
the appellants, is that of Henry Baumgardner, one of
the appellants, and he does not know where the lands are
located, neither does he know anything about the posses-
sion, but simply claims that by reason of being a purchaser
under the Fowler deed, he is entitled to the possession as
well as title, notwithstanding the sale of the lands, and the
making of the deed by the County Treasurer to the appellees.
Now his testimony cannot be considered in this case because
he is a party plaintiff, and there is nothing in his testimony
that goes to show there was any special reason why he
should be allowed to give his testimony under a foreign com-
mission, and not come within the jurisdiction of the Mary-
land Court, where he could be properly cross-examined.
For this reason the appellees excepted to his testimony, and
asked that it be stricken out, besides he was a very unfair
and prejudiced witness, as he positively declined to answer
a number of the cross-questions, and undertook to decide
himself what he would answer, and not allow the Court to
do so.    The appellants not being in possession are not en-
titled to maintain a bill to remove cloud from title.    *Textor*
v. *Shipley*, 77 Md. 479.

The appellants contend that this sale should be set aside
on the ground of some irregularities on the part of the Treas-
urer in making this sale ; there is really no evidence in this
cause to show that there was any material irregularity in
making said sale, and his report shows that the provisions
under sections 49 to 54 inclusive, of chapter 566, Acts of
1890, were substantially complied with, which is all that
the law requires, and even if there was any material irregu-
larity, the appellees contend that under the provisions of
section 54 of the aforesaid Act, which reads in part as fol-

lows: " No such sale shall be set aside if the provisions of this sub-title of this Article shall appear to have been substantially complied with, and the burden of proof shall be on the exceptant thereto, and when such sale shall have been finally ratified by the Court or one of the Judges thereof as herein provided; the order of ratification shall be *conclusive* as to the regularity of the Treasurer's proceedings, &c., " except in case of fraud or collusion in said proceedings," and sale, on the part of the Treasurer and purchaser. Now, in the case of *Stuart* v. *Meyer*, 54 Md. 467, this Court did set aside the sale made by the collector in that case, because the exceptants were permitted to come in and enquire into the regularity of the proceedings under that particular statute, but this Court laid down the rule in that case as follows: " This would seem to be clearly the result of the authorities where the statutes do not declare the effect of the order of ratification to be conclusive of the legality of all the previous proceedings." Now, according to this decision the order of the Circuit Court for Garrett County ratifying and confirming said sale is made conclusive, as to the regularity of said proceedings, and they cannot be enquired into under said local law. Fraud must be proved against the party and will not be presumed, and there is no pretense or scintilla of evidence pointing to any collusion of fraud in this case between the Treasurer and the purchasers, and hence this proposition must fail the appellants.

Briscoe, J., delivered the opinion of the Court.

The plaintiffs are residents of the State of Pennsylvania and were the owners of four tracts of land situate in District No. 4 of Garrett County, and known by the patented names of Factories, containing 1,016¼ acres; Mill Seat, 597¼ acres; Pig Iron, 16 acres, and Log Yard, 14½ acres. These lands were assessed on the books of Garrett County in the name of Thomas and Henry Baumgardner for the sum of $5,321.00, that is: Factory for $4,065, Mill

Seat for $1,195, Pig Iron for $32.00, and Log Yard at $29.00.  Subsequently the interest of Thomas was acquired by the plainriff, John D. Skiles, by deed dated the 22d of July, 1891.  The taxes on these lands for the years 1890 and 1891, aggregating the sum of $123.20, remaining due and in arrear, these four tracts of land were advertised and sold by the Treasurer of Garrett County to satisfy these taxes and were purchased by the defendants, James B. Fowler and Catharine Burger, for the sum of $206.

· It is conceded that the appellants never knew of the sale until after the tax deed had been executed, and after the expiration of the time for the redemption of the land.  Subsequently an offer was made to redeem by paying the pur-. chase money and all necessary expenses, but this offer was refused by the purchasers.  And this bill is filed by the appellants in the Circuit Court for Garrett County, charging that the tax sale was irregular and void, and asking that the Treasurer's deed be annulled and set aside.

The case was considered by the Court below upon bill; answer and proof, and from the order dismissing plaintiff's bill this appeal has been taken.  It has frequently been decided by this Court that the effect of an order of ratification of a tax sale by the Court, under the provisions of Art. 81 of the Code, is to relieve the purchaser from the *onus* of proving the regularity of the proceedings and to establish a *prima facie* case, but the party in possession can assail the title of the purchaser by proving that the provisions of the law have not been complied with.  But it is contended on behalf of the appellees that the local statute of Garrett County under which this sale was had (Acts of 1890, chapter 566), provides that the order of ratification by the Court shall be conclusive as to the regularity of the Treasurer's proceedings and of the sale, except in cases of fraud and collusion between the Treasurer and purchaser, and consequently, the appellants here are precluded from inquiring into the regularity of this sale.

This was the ruling of the Court below and the ground

upon which the plaintiff's bill was dismissed.   But we cannot assent to this contention.   In the case of *Marx* v. *Hanthorn*, 148 U. S. 172, the Supreme Court, in an opinion by JUSTICE SHIRAS, lays down the conclusion reached by the Courts upon this subject: " It is competent for the Legislature to declare that a tax deed shall be *prima facie* evidence not only of the regularity of the sale, but of all prior proceedings and of title in the purchaser, but the Legislature cannot deprive one of his property by making his adversary's claim to it, whatever that claim may be, conclusive of its own validity, and it cannot, therefore, make the tax deed conclusive evidence of the holder's title to the land."   And MR. COOLEY, in treating the subject in his work on *Taxation*, says : " That a tax-deed can be made conclusive evidence of title in the grantee is more than doubtful. The attempt is a plain violation of the great principle of Magna Charta, which has been incorporated in our Bill of Rights, and if successful, would in many cases deprive the citizen of his property by proceedings absolutely without warrant of law or of justice ; it is not in the power of any American Legislature to deprive one of his property by making his adversary's claim to it, whatever that claim may be, conclusive of its own validity.   It cannot, therefore, make the tax-deed conclusive evidence of the holder's title to the land, *or of the jurisdictional facts which would make out title.*   But the Legislature might doubtless make the deed conclusive evidence of everything except the essentials."   *Cooley on Taxation*, 521.

The effect then of the order of ratification in this case, not being conclusive as to the legality of all the previous proceedings, we are brought to the main question in the case, and that is, were the substantial requirements of the statute complied with by the officer in making the sale ? The statute prescribing the notice (Acts of 1890, chapter 566, sec. 52), requires that whenever it becomes necessary for the Treasurer to enforce the payment of taxes by a sale of realty, he shall advertise such real estate, or so much

thereof as may be necessary, once a week for three succes-
sive weeks, in one newspaper published in Garrett County
and *by handbills set up* on and near said property, at the
Court-house door and at five other places in the district
where the property is located, &c.

Now the proof shows that handbills were not posted on
or near the property, as required by the statute.   The
Treasurer who made the sale testified that he did not know
where three of the tracts were.   This defect of notice we
think is clearly fatal to the validity of this sale, and do not
find it necessary to examine the other alleged illegalities in
the proceeding of the Treasurer.   In the case of *Richardson*
v. *Simpson, ante* p. 155, it was said: " It cannot be seriously
doubted that under a summary proceeding, where a special
power has been executed   *   *   the failure of the officer
to give a proper notice of the sale,   *   *   will deprive him
of authority and jurisdiction to proceed at all, and will in-
validate the deed which he subsequently makes, even though
the sale may have been ratified by the Court."   And as
applicable to tax sales, notices required to be given within
a certain time, *or any prescribed mode*, must be so given
and are mandatory requirements.   *Cooley on Taxation*, 288.
And it will be seen that the omission to advertise land for
sale for taxes as required by a statute is not a mere irregu-
larity but is a vital defect, and the validity of all subsequent
proceedings depends upon a substantial compliance with
such statutory requirement.   The notice as required by the
statute is jurisdictional.   *Blackwell on Tax Titles*, 396.

The case of *Textor* v. *Shipley*, 77 Md. 473, relied upon
by the appellees, is entirely distinguishable from this.   In
the application of the rule laid down in *Textor* v. *Shipley*,
*supra*, Courts have held that where a plaintiff has the legal
title to lands that are wild, uncultivated and unoccupied, he
may invoke the aid of a Court of Equity to remove a cloud
upon his title, although he has no other than constructive
possession resulting from legal ownership.   There is no
proof here that the tax purchasers have taken possession of

these lands under the deed. Consequently the plaintiffs could not sue in ejectment for the recovery of the property.

For these reasons, we shall reverse the decree appealed from and remand the cause to the end that a decree may be passed declaring the sale and the order of ratification null and of no effect, and that the deed of the Treasurer be cancelled.

*Decree reversed and cause re-
manded with costs.*

(Decided March 24th, 1896.)