WALLACE v. INTERNATIONAL PAPER CO. et al.

(Supreme Court, Appellate Division, Third Department.  June 28, 1900.)

1. TAXATION—SALE—TAX DEED—VALIDITY—TWO YEARS' RECORD—CONCLUSIVENESS.

Laws 1896, c. 908, § 120, authorizes the comptroller to sell lands returned for nonpayment of taxes, if such taxes and the interest thereon remain unpaid for one year from February 1st following the year of levy. Section 131 requires the comptroller to execute, one year from sale, a conveyance of any lands sold by him for taxes. Section 132 makes every such conveyance, which has been recorded for two years, conclusive evidence of the validity of the sale and prior proceedings. *Held* that, where taxes had been paid prior to the comptroller's sale of the lands, his deed was void, and subject to be set aside, though it had been recorded for two years.

**2. PAYMENT OF TAXES—EVIDENCE—FINDING.**

A comptroller's sale book showed that a tax for 1862, levied under Laws 1853, c. 347, authorizing the levy and collection of a certain road tax, was assessed against a parcel of land described as all of a certain township, which was not subdivided. The land in dispute was at that time included in that portion of the township. Another road tax was also levied on the parcel prior to 1866, and a memorandum in the comptroller's sale book, and his receipt, showed the payment of this latter tax, but not of the former. *Held*, that a finding that all taxes prior to 1866 had been paid was not supported by the evidence; the taxes under the act mentioned not being shown to have been paid.

**8. SAME—NONPAYMENT—SUBSEQUENT SALE—PRESUMPTION.**

Where it appears that a road tax levied for the year 1862 remained unpaid, and the land was sold by the comptroller in 1871, it will be presumed that the sale was made for the unpaid taxes; all other taxes having been paid.

**4. PARTITION—PLAINTIFF'S INTEREST— FAILURE OF PROOF — DISPOSITION OF CAUSE.**

Where, in partition, it appears on the proofs that plaintiff has no title to or interest in the lands, the complaint should be dismissed.

Appeal from special term.

Action for partition by Edwin R. Wallace against the International Paper Company, William McEchron, and others. From an interlocutory judgment determining title to the lands in favor of plaintiff, defendants appeal. Reversed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

Griffin & Ostrander, for appellants.

Homer & Waldo Weston, for respondent.

KELLOGG, J. The trial court determined that the plaintiff had title to an undivided two-thirds of the lands sought to be partitioned, and the International Paper Company was the owner of the remaining third; that William McEchron, who claimed to own the two-thirds interest which the court found was owned by plaintiff, was in fact the owner of no interest whatsoever in such lands. And this conclusion was reached by the learned court through holding that the deed from the state to McEchron was invalid, because the sale was for taxes which in fact had been paid prior to the sale. If the proof established the fact that the taxes had all been paid prior to the sale, the deed to McEchron would, in my opinion, have been void. The comptroller is authorized to sell lands for unpaid taxes. He has no authority to sell except for unpaid taxes. This power is given to the comptroller solely to enforce the payment or collection of a tax imposed for a public use, and the power must necessarily vanish with the tax. The learned counsel for appellant urges that the tax law, as amended in 1896 (chapter 908, § 132), treated as a statute of limitations, and applied in this case, effectually cuts off the right to show that there were no taxes unpaid when the sale was made, and in this way a void deed of conveyance, he urges, is made conclusively valid. I do not think that the legislature has intended to so declare, or has in fact so declared. Nor do I think the constitution permits the legislature to so declare. In Cromwell v. MacLean, 123 N. Y. 491, 25 N. E. 935, Peckham, J., uses this language:

"From People v. Turner, 117 N. Y. 227, 22 N. E. 1022, and Ensign v. Barse, 107 N. Y. 329, 14 N. E. 400, 15 N. E. 401, back through our Reports, I have not been able to find a case which points to the existence of a power on the part of the legislature to convey the title of a man's property from him to another by a mere exercise of the legislative will."

Referring to the Cromwell Case and Ensign Case, it is true that Cullen, J., in Meigs v. Roberts, 161 N. Y. 640, 56 N. E. 838, says these were strictly cases "of a retrospective statute, for no period of time was given within which any party affected could assert his rights." He also says:

"This principle does not apply to a statute of limitations; for such a statute will bar any right, however high the source from which it may be deduced, provided a reasonable time is given a party to enforce his right."

And still I do not believe that the court of last resort meant to declare that a short statute of limitations could create a title,—could make an unauthorized deed, a deed absolutely void in its inception, a conclusively valid one. In other words, I do not think the court intended to declare that the comptroller might deed to John Doe the capitol at Albany under the form of a tax deed, and after the lapse of a year from the date of record of the deed, unless some action was taken, that the deed would be conclusive evidence of title. Nor would a comptroller's deed of property against which no tax was ever levied be at any time good. The statute of limitations does not run in favor of such deeds, or against the individual rights opposed to such deeds. The statute, as a statute of limitations, runs only in favor of such deeds as are authorized,—the deeds of the comptroller for unpaid taxes. The authority of the comptroller is stated in the tax law (Laws 1896, c. 908, § 120):

"The comptroller may sell any lands heretofore or hereafter returned to him for non-payment of any tax thereon, if such tax and the interest thereon, or any part thereof, shall remain unpaid for one year after February first following the year in which the tax was levied."

This is his only authority to make a sale, and it is specifically provided that he may sell "so much of such lands as may be necessary to discharge the taxes, interest and charges due thereon at the time of sale"; and it is such authorized sales, and touching deeds given in pursuance thereof, that section 132 refers to. Such authorized deeds are made conclusive evidence of title after the lapse of a given time, but no unauthorized deed based upon an unauthorized sale (a sale where there were no unpaid taxes to warrant it) was intended to be covered by this section of the tax law. Section 131 provides, "After the expiration of one year from time of sale, the comptroller shall execute in the name of the people of the state * * * a conveyance of any lands sold by him for taxes. Section 132 reads, "Every such conveyance," etc.; that is, conveyance on a sale for unpaid taxes. The contention, therefore, of the appellant, that the deed to McEchron is unassailable, on the ground that there were no taxes unpaid at the time of sale, must fail.

The only other material question which the case presents, as I look at it, relates to the proof of payment of the taxes prior to the sale. The learned trial court found as a fact that the comptroller sold at the tax sale of 1871 an undivided two-thirds of the lands described

65 N.Y.S.—35

in the complaint to Warren Curtis, and that defendant William McEchron has succeeded to the title, if any, so conveyed; that such sale was for taxes assessed and levied prior to the year 1866. The court also found as a fact that all taxes levied prior to 1866 had been paid. In this last finding the proof shows that the court was in error; that there was existing and unpaid a road tax known as the "Hamilton, Herkimer, and Lewis Road Tax," for the year 1862. This tax seems to have been authorized by chapter 347 of the Laws of 1853, and appears upon the comptroller's sale book as assessed and levied against a parcel described as "all of said township [township 4] not subdivided, H. H. & L. Road, 23,724 acres," and which parcel includes this 1,128 acres described in the complaint. Township 4 lies partly in the town of Morehouse. The portion in the town of Morehouse was equally liable with other portions of township 4 for this Hamilton, Herkimer, and Lewis road tax, and for the year 1862 the tax seems to have been assessed upon the entire parcel of 23,724 acres. The portion in the town of Morehouse belongs in no subdivision, or is not subdivided, and hence is included in the general description appearing in the sales book. The tax for 1862, assessed as the "Black River State Road Tax," was paid, but the Hamilton, Herkimer, and Lewis road tax does not appear to have been paid. The only evidence of payment of any tax is the memorandum appearing in the sales book of the comptroller, and the receipt of the comptroller given to Pamelia J. Munn in 1866. In neither does it appear that this Hamilton, Herkimer, and Lewis road tax for the year 1862 was paid. The comptroller therefore was authorized to sell, and presumably the sale of 1871 was made to enforce the collection of this unpaid tax. The deed was recorded February 7, 1887. This action was brought in 1899, after the limitation fixed by the tax law of 1896, before referred to, had run against the plaintiff's right to the land, or his right to question the validity of the authorized sale. Upon the proofs, the plaintiff had no interest in or title to the lands in question, and the complaint should have been dismissed. The interlocutory judgment should be reversed, with costs.

Judgment reversed on the law and facts, and new trial granted; costs to abide the event. All concur, except PARKER, P. J., and MERWIN and SMITH, JJ., in the result.