Salisbury, J.
This is an action in ejectment to recover a tract of land in Essex county, purchased at a comptroller’s tax sale. The complaint is in the ordinary form and demands judgment for the possession of the premises and alleges that defendants have unlawfully entered upon said premises and unlawfully retain possession thereof. The answer is (a) a *701 general denial, and (b) that the defendants are now and before the commencement of the action were the owners and in possession as such of the premises in suit, and (c) that the defendants and their grantors were for more than fifty years prior to the commencement of the action in the actual and lawful possession of the premises to the exclusion of the plaintiff and all others claiming possession thereto.
The plaintiff claims title to the premises by virtue of a tax deed from the comptroller of the state of New York dated February 10, 1881, and recorded in the Essex county clerk’s office June 27, 1882; that this deed ran from the tax sale of 1877, which was for the unpaid taxes of 1869 and 1870; that notice to the occupant was served by the plaintiff; that in 1895 the comptroller, pursuant to chapter 711 of the Laws of 1893, published a notice covering the premises and declaring himself in possession of the land.
The defendants claim title, so far as the facts are here pertinent, by a chain of conveyances from 1776 to 1909. They also claim payment of the taxes for which the property was sold to the state, and introduced in evidence certain tax receipts which read as follows:
“ Received of Mrs. John Balfour Two dollars and fifty-four cents ($2.54) tax on lot 104r-103, Township 26, Totten & Crossfield’s Purchase, Olmsteadville, January 13th, 1870.
“ Patrick Farkelly, Collector.”
“Received of widow Balfour Four dollars and twenty-five cents ($4.25) in full for her tax for the year 1870, on lot No. 104, 114 acres and lot No. 103, 36 acres, 26 Township, Totten & Crossfield’s Purchase.
“ R. O. Connor, Collector.
“By Henry Bradley.”
*702 It was conceded by the parties that the tax receipts were for taxes levied, the first for 1869 and the second for 1870; plaintiff claiming, as hereafter shown, that the payments were not in full and defendants insisting they were in full for all taxes for these years.
Plaintiff also claims that the assessment on which the tax sale for failure to pay the tax was based, was assessed as non-resident lands when in fact it was occupied resident lands. Mrs. John Balfour (or the widow Balfour) was the predecessor in title of the defendants. Further facts presented by the record show that as early as 1871 the premises were in -the possession and occupancy of the grantors of defendants ; that there was .a farm house, barn, meadow and farm land upon a portion thereof; that such possession and occupancy had existed for a long period prior to that time and has continued to exist under the defendants ’ grantors and under the defendants.
The plaintiff relies on its title by virtue of the tax sale and the statutes applicable thereto, namely, sections 131,132 and 133 of the Tax Law. These sections in so far as they relate to this case are as follows:
“ § 131. After the expiration of one year from the time of sale the comptroller shall, after application in writing therefor and upon the surrender of the certificate * * * execute a conveyance of any lands so sold by him for taxes, * * * which shall vest in the grantee an absolute estate in fee simple * * * and which shall be presumptive evidence that the sale and all proceedings prior thereto, from and including the assessment of lands sold, and that all notices required by law to be given previous to the expiration of the time given by law for the redemption thereof, were regular and in accordance with all the provisions of law relating thereto. After two years from the date *703 of such conveyance such presumption shall he conclusive.
“ § 132. Every such conveyance heretofore executed by the comptroller * * * which have for two years been recorded in the office of the clerk of the county in which the lands conveyed thereby are located * * * shall be conclusive evidence that the sale and proceedings prior thereto, from and including the assessment of the lands, and all notices required by law to be given previous to the expiration of the time allowed for redemption, were regular and were regularly given, published and served according to the provisions of all laws directing and requiring the same or in any manner relating thereto, but all such conveyances * * * shall be subject to cancellation, by reason of the payment of such taxes, or by reason of the levying of such taxes, by a town or Avard having no legal right to assess the land, * * * or by reason of any defect in the proceedings affecting the jurisdiction upon constitutional grounds, on direct application to the comptroller, or in an action brought before a competent court therefor; provided, however, that such application shall be made, or such action brought, in the case of all sales held prior to the year eighteen hundred and ninety-five Avithin one year from June fifteenth, eighteen hundred and ninety-six.”
Section 133 provides that the comptroller may advertise once a week for three weeks successively, “ a list of the wild, vacant and forest lands to which the state holds title, from a tax sale or otherwise, in one or more newspapers * * * and from and after the expiration of such time, all such wild, vacant and forest lands are hereby declared to be and shall be deemed to be in the actual possession of the comptroller.”
Tax sales being in derogation of private rights of *704 property, the laws authorizing and regulating them must be strictly construed in so far as they are intended for the benefit or protection of the citizen, and their requirements must be strictly followed in order to pass any title to the purchaser.
I am convinced that when the lots were assessed for the 1869 and 1870 tax they were occupied by the defendants’ predecessor in title and that they have ever since been occupied by the defendants or the persons to whose title they succeeded. It has been held that where lands are occupied an assessment as nonresident lands is illegal. People ex rel. Barnard v. Wemple, 117 N. Y. 77. If lands assessed as non-resident lands were in fact occupied when assessed, or if the tax had been paid before the return was made to the comptroller, then in the one ease the assessment was void, and in the other all proceedings after payment were void. Joslyn v. Rockwell, 128 N. Y. 334. It follows then that the lands being at the time of the assessment occupied lands and having been assessed as non-resident lands such assessment is void, and were there no other matters to consider the action here would terminate favorably to the defendants.
It may be well at this point to consider the second proposition urged by the defendants, that the tax was paid before it was returned to the comptroller. The receipts offered in evidence show that the then owner paid taxes on this property for 1869 and 1870. In the absence of other proof the receipts would in themselves raise a presumption of payment in full. The plaintiff contends, however, that by the introduction of the comptroller’s book the presumption is overcome and that the book shows that the payments shown by the receipts did not extinguish the amount of the tax levied against the premises. If it be true that the books of the comptroller show a greater amount of *705 taxes than appear to have been paid then I think under the facts here shown, the presumption follows that the owner paid the amount demanded by the collector. If this be so then the case would fall within the doctrine laid down in Wallace v. McEchron, 176 N. Y. 424, to the effect that section 132 of the Tax Law does not apply as affected by the Statute of Limitations therein specified, unless (a) the taxes have been paid, or (b) that the town or ward had no legal right to assess the lands, or (c) unless there is a defect affecting the proceedings on constitutional grounds; and if the default of the taxpayer is caused by the failure of the officer to render a proper statement of the unpaid taxes, as a Statute of Limitations the section does not apply and neither is it efficacious as a curative act. If the assessment was made as non-resident lands when in fact it was resident lands, the sale was invalid and no title passed to the purchaser. Joslyn v. Rockwell, supra. This was a jurisdictional defect and beyond the saving grace of a curative act. If available it is as a Statute of Limitations. Bryan v. McGurk, 200 N. Y. 332, 336. It has been held in numerous cases that the sale of lands for taxes is of no validity if the taxes were in fact paid. Jackson v. Morse, 18 Johns. 441; Wallace v. International Paper Co., 53 App. Div. 41; Joslyn v. Rockwell, 128 N. Y. 340; Gilbert v. Ackerman, 159 id. 118.
The sections above quoted do not make the tax deed conclusive evidence of a complete title but leave open to the owner full right to assail any jurisdictional defect. Joslyn v. Rockwell, supra.
“ It has not been held in any case in this court that I am aware of that a statute making a tax deed after a certain time designated in the statute, conclusive evidence of every fact which ought to exist in order to create a good title under such deed, would *706 be valid as an exercise of legislative power as against the original owner who had always been in possession of his land, and of all his rights growing ont of it, and whose possession remained undisturbed up to the time of the commencement of an action to obtain possession under a tax deed, and where the owner had in fact either paid his taxes before sale or a merely formal sale had been made, which was void for want of jurisdiction. The record of a deed from the comptroller, it is contended would constitute no valid notice. It is claimed that one in possession of all his rights cannot be compelled to resort to legal proceedings or else run the risk of losing them. * * *. There is very weighty authority for holding such a statute in the case of one in possession to be invalid.” Joslyn v. Rockwell, supra.
In the case of Maguiar v. Henry, 84 Ky. 1, the court held that a statute which provided that a tax deed be conclusive evidence of all facts essential to its validity was beyond the power of the legislature to enact.
In the case of Marx v. Hanthorn, 148 U. S. 172, where the tax deed was sought to be sustained because of a statute making it conclusive evidence of the validity of all prior proceedings, that court, in considering the power of the legislature to enact such a law, said: “ It is competent for the legislature to declare that a tax deed shall be prima facie evidence, not only of the regularity of the sale, but of all prior proceedings, and of title in the purchaser, but that the legislature cannot deprive one of his property by making his adversary’s claim to it, whatever that claim may be, conclusive of its own validity, and it cannot, therefore, make the tax deed conclusive evidence of the holder’s title to the land.”
Such a statute was held unconstitutional in Stoudenmire v. Brown, 48 Ala. 699. That statute provided that *707 after the expiration of a given time a tax deed should be conclusive evidence of all the facts therein enumerated. The original owner, however, remained in possession of the lands and the action was for the possession of the lands by the grantee under the tax deed.
In Baumgardner v. Fowler, 82 Md. 639, it was held that an attempt to make such a deed conclusive evidence of the regularity of prior proceedings was a plain violation of the great principle of Magna Charta, which has been incorporated in our Bill of Bights, and if successful would in many cases deprive the citizen of its property by proceedings absolutely without warrant of law or of justice.
In White v. Flynn, 24 Ind. 46, the court held that it was not competent for the legislature to make a tax deed conclusive evidence of the validity of prior proceedings.
I hold that the tax sale was void but that it is secure from attack by the defendant because of these legislative enactments operating as a Statute of Limitations.
There remains then the single question, are the defendants, by reason of these statutes, divested of all title to the property. I have been unable to find; any decision in this state directly in point. An examination of the reasoning in Maders v. Lawrence, 49 Hun, 360, would indicate that the Statute of Limitations was a bar to the remedy but not to a defense. The defendants are barred under this statute from taking affirmative action; but I think a different rule obtains when the plaintiff asserts a cause of action to which such statute has not attached and the defense is merely resorted to for the purpose of showing jurisdictional fault in the proceeding. An examination of the reasoning in Wallace v. McEchron, supra, shows *708 that the court held that the provisions of section 132 of the Tax Law providing that every conveyance theretofore executed by the comptroller shall be, after a certain period, conclusive evidence that the sale and all proceedings prior thereto were regular, can only operate as a curative act and is ineffectual to validate a conveyance when the tax upon which the sale was based was actually paid. The case further holds that the remaining portion of the section providing for cancellation, if considered as a Statute of Limitations, is limited to the three grounds specified, namely, first, that the tax has been paid; second, that the town had no right to assess the land; third, a defect affecting the procedings on constitutional grounds. As thus limited the case holds that the statute did not bar the plaintiff’s right to rely on a defect other than the three specified. This provision considered as a Statute of Limitations is limited not only to the three specific grounds, but is limited also to the proceedings by which such grounds may be asserted, namely, (1) on direct application to the comptroller, or (2) in an action brought before a competent court therefor. Thus the complainant is limited to an action or proceeding initiated by himself. He is not limited by any express provision of the section to setting up the defect as a defense in an action brought against him. Adopting the reasoning of the case limiting the grounds of action to the three specified, the same reasoning would limit the proceeding to the two affirmative actions specified. It would seem, therefore, that an owner who has always remained in possession of his land sought to be recovered in an action based on a tax title could show that the lands assessed as non-resident lands were in fact occupied when the lands were assessed, or that the tax was paid before sale. Statutes of limitations operate to bar *709 a remedy. The defendants are not making an attack. They are defending.
Buty v. Goldfinch, 133 Pac. Repr. 1057; 46 L. R. A. (N. S.) 1065, was a case somewhat similar in its nature. In that state the statute invoked read as follows: Actions to set aside or cancel the deed of any county treasurer issued after and upon the sale of lands for general state, county or municipal taxes, or for the recovery of lands sold for delinquent taxes, must be brought within three years from and after the date of the issuance of such treasurer’s deed.” In construing that statute as a Statute of Limitations the court in its opinion by Parker, J., said: " The principal contention of counsel for the appellant is that the tax deed has become conclusive against the claims of respondent, and that she has thereby been divested of all title to the property by virtue of the three year-statute of limitation against actions to set aside tax deeds. In view of the fact that the tax foreclosure judgment was rendered without jurisdiction because of absolute failure of process in that action, it is plain that the tax deed does not result in divesting respondent of her title to the property, unless the statute of limitations here invoked can be held to have rendered unavailable to respondent her defense resting upon want of jurisdiction of the court to render the tax foreclosure judgment. * * * This statute has been the subject of consideration by this court, and given full force and effect in the following cases (citing cases). In each of those cases the original owner of the land was the plaintiff, seeking in effect to set aside a tax deed and recover the land held or claimed by the defendant under the tax deed. In each it was held that the cause of action there sought to be enforced was barred by this statute; but in none of them was it held or even, suggested that this statute would bar the orig *710 inal owner, in possession at all times following the tax foreclosure, from defending his possession and title upon the ground of such foreclosure being void, when claim to the property is asserted by another under such foreclosure. In none of those cases was the effect of this statute upon the defense, which the original owner in possession might make, involved. Our attention has not been called to any decision of this court, and we think there have been none, where any such question has been considered. We have held that a void tax deed may constitute such color of title as to become a basis for the running of the statute of limitations; but not that such color of title, unaccompanied by possession, will by mere lapse of time divest the original owner of title to property he is in the actual possession and enjoyment of. This respondent did not commence this action ‘ to set aside or cancel ’ the tax deed, nor * for the recovery of ’ the property in question. She was already in possession of the property and in the full enjoyment of all the rights in that regard which ownership and possession could possibly give her. Being in this situation, she had no occasion to do anything or take any steps looking to the protection of those rights until some one sought to invade them. All that she here seeks to invoke in the protection of her rights is by way of pure defense. If the language of this statute should be given the construction claimed for it by counsel for the appellant, we are unable to see how it could be held to be a valid exercise of legislative power in the light of the due process of law provisions of the federal and state constitutions.
‘ ‘ Judge Cooley in his work on Constitutional Limitations (7th ed. page 522) after noticing the legislative power to pass statutes of limitation, observes: ‘All limitation laws, however, must proceed on the theory that the party, by lapse of time and omissions *711 on his part, has forfeited his right to assert his’title in the law. Where they relate to property, it seems not to be essential that the adverse claimant should be in actual possession; but one who is himself in the legal enjoyment of his property cannot have his rights therein forfeited to another for failure to bring suit against that other within a time specified to test the validity of a claim, which the latter asserts, but takes no steps to enforce. It has consequently been held that a statute which, after a lapse of five years, makes a recorded deed purporting to be executed under a statutory power conclusive evidence of a good title, could not be valid as a limitation law against the original owner in possession of the land. Limitation laws cannot compel a resort to legal proceedings by one who is already in the complete enjoyment of all he claims.”
In Groesbeck v. Seeley, 13 Mich. 329-342, Justice Campbell, in speaking for the court touching statutes of limitation and legislative power to make them effective against persons already in possession, said: “ These laws do not purport to take away existing rights although their operation may often have substantially that result. But they are designed to compel parties whose rights are unjustly withheld from them to vindicate their claims within some reasonable time. If a person who has been ousted of his possession or dominion desires to regain it, he knows that he must resort to those means which are furnished by the law, either by the peaceable act of the party himself or by legal prosecution. A limitation law simply requires him to proceed and enforce these rights within some reasonable time, on pain of being deemed to have abandoned them. Such laws can only operate on those who are not already in the enjoyment and dominion of their rights. A person who has a lawful right and is actually or constructively in possession can never *712 be required to take active steps against opposing claims. The law does not compel any man who is unassailed to pay any attention to unlawful pretenses which are not asserted by possession or suit. When such a title is set up he has a right to defend himself by. jury, if the claim is one of common-law cognizance, or otherwise if of a different nature. But to hold that, under any circumstances, a man can be deprived of a legal title without a hearing is impossible without destroying the entire foundations of constitutional protection to property. No one can be cut off by limitation until he has failed to prosecute the remedy limited; and no one can be compelled to prosecute when he is already in possession of all that he demands. ’ ’
In Baker v. Kelley, 11 Minn. 480, 495, Chief Justice Wilson, speaking for the court upon the same subject, said: “ It is not necessary for a party in the enjoyment of his rights to institute any proceedings against an adverse claimant, and to require him to do so would be, in many cases, imposing a grievous and expensive burden. A law requiring a party to take such action is not, nor has it, any analogy to a statute of limitation. Statutes of limitation only operate as an extinguishment of a remedy, and, of course, can have no application to a party who neither seeks nor needs a remedy.”
In Dingey v. Paxton, 60 Miss. 1038, 1054, Justice Cooper, speaking for the court, said: “ Before the entry of the defendant upon the lands, the plaintiffs, by their tenant, were in actual occupancy of all the land which was susceptible of cultivation, and were in the constructive possession of the whole tract. The sale of the lands for the unpaid taxes of 1874 was’ insufficient under well settled principles, to divest their title. By a proceeding in invitwn the state had attempted to acquire title under its laws as then exist *713 ing and had failed. By a subsequent law it provides that notwithstanding such failure, the shadow of title thus acquired shall become the actual title unless attacked within a certain time. It is the expiration of time without regard to possession which is to transfer title from the owner and vest it in the state, or its vendee or donee. The power of the Legislature to prescribe within what reasonable time one having a mere right of action shall proceed is unquestionable; but there is a wide distinction between that legislation which requires one having a mere right to sue, to pursue the right speedily, and that which creates the necessity for suit by converting an estate in possession into a mere right of action, and then limits the time in which the suit may be brought. * * * Its operation is first to divest from the owner the constructive possession of his property, and to invest it in another and in favor of the possession thus transferred to put in operation a statute of limitations for its ultimate and complete protection. A complete title to land, according to Blackstone, consists of juris et sesinoe conjumctio; the possession, the right of possession and the right of property. One who is in the actual or constructive possession of his lands, and who has the right of possession and of property, needs no action to enforce his rights. He is already in the enjoyment of all that the law can give him and cannot be disturbed in such enjoyment except by due course of law.’ * * *” The substance of the doctrine which we have been discussing is well summed up in the text of 25 Cyc. 1063, as follows: “Pure defenses are held not to be barred by the statute of limitations. ’ ’
If the plaintiff relies upon section 133 of the Tax Law as to possession being in the plaintiff, he is met by the proposition that that statute relates to wild, vacant and forest lands to which the state holds title. *714 The notice to the occupant and. the pleadings show that the owner was in the actual possession of the premises, and the evidence shows that he has been since previous to the tax sale.
I hold, therefore, as matter of law, that the Statute of Limitations as prescribed by the sections to which reference has been made is not applicable to the defense here interposed. The complaint should be dismissed, with costs.
Judgment accordingly.