CONNELLY *v.* CONNELLY

[No. 98, October Term, 1947.]

*Decided February 20, 1948.*

The cause was argued before MARBURY, C. J., DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Jacob A. Gross* for the appellant.

*Joseph G. Finnerty,* with whom was *T. Hunt Mayfield, Jr.,* on the brief, for the appellees.

GRASON, J., delivered the opinion of the Court.

On July 19, 1940, Boyd S. Connelly filed in the Circuit Court of Baltimore City, a bill of complaint against his wife, Nola Frances Connelly, praying for a divorce *a vinculo matrimonii,* on the grounds of abandonment and desertion. On October 14, 1940, the chancellor passed a decree granting the divorce as prayed.

On the 21st day of October, 1940, Connelly married Aurelia Dorothy Connelly (appellee), and on or about the 15th day of January, 1943, he entered the service of the United States Navy.

On February 6, 1945, the appellee filed proceedings in the United States District Court for the District of Columbia, praying a divorce *a vinculo matrimonii* from the said Boyd S. Connelly. This action abated by his death on July 4, 1945, while he was still in the United States Naval service.

On October 25, 1945, Nola Frances Connelly (appellant) filed a petition in this case. On June 28, 1946, she filed an amended petition, wherein she prayed:

"(a) That the decree of divorce *A Vinculo Matrimonii* in favor of Boyd S. Connelly from Nola Frances Connelly, passed herein on October 14, 1940, be set aside, vacated and annulled.

"(b) That the said Petitioner, Nola Frances Connelly, be declared to be the widow and rightful heir at law of the said Boyd S. Connelly, thus entitled to share in the property rights of Boyd S. Connelly, as his widow.

"(c) And for such other and further relief as the nature of this case may require."

On November 29, 1946, appellee filed an answer to the amended petition. Voluminous depositions were taken on behalf of the appellant at Huntington, West Virginia, and filed in this cause. Thereafter testimony was taken before the chancellor. After a consideration of the depositions and testimony, and hearing the solicitors, the chancellor, on the 17th day of June, 1947, dismissed the amended petition of the appellant, with costs, and "Adjudged, Decreed and Declared that the said Aurelia Dorothy Connelly is the lawful widow and rightful heir-at-law of the said Boyd S. Connelly and is entitled to receive all the benefits due her as such lawful and legal widow." From that decree the case comes here on appeal.

The appellant married Connelly on June 1, 1923, at Catlettsburg, Kentucky, and lived continuously in Huntington, West Virginia, since 1930. Five children were born to them, three of whom survive, two boys who are now of age, and a daughter, Wanda Connelly, who at this time is about seventeen years of age. The testimony shows Connelly was engaged in the roofing business, and between April, 1937, and July, 1939, was engaged in that business at Huntington, West Virginia. Frequently, however, he would take work elsewhere, and he seems to have followed that occupation quite frequently in Washington, D. C. He was a man of little or no sense of responsibility to his wife and family. He left home when

he pleased, and returned when he pleased. The wife worked, and was the main support of the family. During the war she worked continuously at a war plant. In May, 1940, he agreed, in writing, to pay the paltry sum of $10 a week to his wife, to be applied towards the maintenance of the family. The appellant states that she knew of a number of affairs he had with women. He went to Huntington, with appellee, on July 4, 1940. He was not married to her at that time. He stopped at the home of his brother, Rex Connelly, for about four hours, where he left the appellee. He went to see the appellant. She testified that on that occasion he offered to give her $500 with which to get a divorce from him, and when the decree was signed he would pay her an additional $500. This the appellant declined.

He returned to Washington from that trip, came to Baltimore on the 19th day of July, 1940, and instituted this case by the filing of his bill for divorce *a vinculo matrimonii* from the appellant. In his bill he stated that he married appellant on June 1, 1923, at Catlettsburg, Kentucky; that she is a non-resident of the City of Baltimore, State of Maryland; that he was a resident of the State of Maryland; that no children were born to the parties; that the defendant abandoned and deserted him on July 10, 1937, and that the abandonment and desertion continued uninterruptedly until the filing of this suit. An order of publication issued and a decree *pro confesso* obtained.

It is conceded in this case that Connelly at that time was not a resident of Maryland; that three surviving children were born to him by the appellant, and that he married the appellee at Forest Villa, Maryland. It is further conceded that Connelly died while in the service of the United States Navy; that no administrator of his estate has been appointed; that there is a claim for a widow's pension from the United States, which his widow would be entitled to; that there is a severance pay of $328, which has been paid to appellee; that there is also approximately, in earned pay, the sum of $400 which the govern-

ment has not yet paid, having been notified of these proceedings; that this sum would be payable to Connelly's widow; that Connelly, while in the service, purchased a life insurance policy in the amount of $10,000, payable to his daughter, Wanda Connelly, as beneficiary, but if she should die before receiving all installments payable under the policy, the next beneficiary would be his widow.

It is conceded that Connelly, after he abandoned and deserted his wife and children, filed in this case a bill for absolute divorce against his wife, and made in that bill certain false and perjured allegations; and by false and perjured testimony deceived the court into believing the false allegations contained in his bill, and thereby procured a decree divorcing him *a vinculo matrimonii* from his wife.

The appellee raises two questions: 1. Has the appellant "any 'property rights' by virtue of her status as the contingent beneficiary of the policy of insurance, or by virtue of her claim to a widow's pension from the United States Government?" 2. Was the appellee guilty of laches?

It is contended by appellee that the appellant, in no event, could have a property right in the policy of insurance, nor has she a property right in the widow's pension. This being so, she cannot maintain her petition, because courts will not disturb a divorce decree after the death of one of the parties, unless property rights are involved. But if appellant is declared to be the lawful widow of Connelly, she would have a property right in $328 which the government paid to the appellee as the widow of Connelly. But if appellee is declared not to be the lawful widow of Connelly, then, manifestly, the appellant would be entitled to any sum paid to his lawful widow. This is property in which the lawful widow certainly would have a right.

Furthermore, at the time of Connelly's death the government owed him, in earned pay, the sum of $400. Under the government regulations this $400 will be paid to his widow. Certainly the lawful widow has a property

right in this money. It is manifest, therefore, that this case involves a property right in the appellant, if she is the lawful widow of Connelly. And if it does involve a property right (as it does), the proceeding now before the court was properly brought by the petition filed by the appellant. This was flatly decided in the late case of *Croyle v. Croyle*, 184 Md. 126, 40 A. 2d 374, 380, which closely parallels the case at bar.

But the appellee says that the appellant is barred from asserting this right because she was too late in filing her petition in this case. The doctrine of laches is an equitable doctrine and its application depends upon the facts and circumstances of each case. Its purpose is to accomplish justice. It is never invoked unless it accomplishes that end.

"There are two elements in laches—lack of diligence on the part of plaintiff and injury to the defendant because of it. 30 C. J. S., Equity, § 112, p. 521; *Westco-Chippewa Pump Co. v. Delaware El. & Supply Co.*, 3 Cir., 64 F. 2d 185." *Croyle v. Croyle, supra.* See also *Houck v. Houck*, 112 Md. 122, at page 133, 76 A. 581; *Lipsitz v. Parr*, 164 Md. 222, 164 A. 743; *Simms v. Simms*, 178 Md. 350, at page 355, 13 A. 2d 326; *Hinden v. Hinden*, 184 Md. 575, 42 A. 2d 120.

The appellee knew Connelly and saw him daily in Washington, D. C., for ten months before she married him. She visited his brother, Rex Connelly, with him, on July 4, 1940. She knew that Connelly instituted this suit for a divorce. After the decree, and before the marriage, she visited, with Connelly, his brother Robert E. Connelly, at Williamsport, Pennsylvania. This trip was taken by airplane. She testified that she knew Connelly had been married, but assumed he had been divorced. Her testimony that she never asked Connelly anything about his previous marriage, or whether or not he had a family, or whether he was still married, under the circumstances of this case, is at least subject to doubt. She did testify that Connelly had a residence in Maryland, where he worked or carried on some business, but

she did not know the name of this place in Maryland, and referred to it as a "hick town". It is stipulated, however, that Connelly was not a resident of Maryland when he instituted this suit. She said that Connelly was a playboy, who infatuated her, but was a worthless man whom she had to support. The injury that was caused her because the appellant did not bring this proceeding more promptly, seems to be the expense she was put to in maintaining and supporting Connelly. This assertion of injury, in our opinion, amounts to trifling with the court. It is perfectly preposterous that such a claim should bar a decent wife and mother from her lawful rights as widow of Connelly.

Connelly took his fourteen year old boy from Huntington, West Virginia to Washington, D. C., to stay with him and the appellee after they were married. He told the boy he was married to appellee, and not to tell his mother. A few days after he returned to the home of his mother he told her. Appellee complains bitterly that the wife, knowing this, should have immediately instituted divorce proceedings against her husband. The wife says that Connelly had previously had affairs with women, and she did not believe that he was divorced. A wife is not compelled to institute a suit for divorce, even if she knows her husband has committed adultery. Appellant heard rumors of the marriage, but did not know of the marriage until she found out about it through the Department of the United States Navy, when she received a letter under date of August 30, 1943. At that time she was supporting herself and her children, and worked daily. She says she had no money, and that she could not afford to lose time from her work to go to Baltimore to investigate the matter. Subsequently her sons joined the service and helped her. She then consulted a lawyer and filed these proceedings. She brought this suit twenty-six and one-half months after she was notified by the government of her husband's divorce.

"Lapse of time will not bar relief where circumstances exist which excuse the delay and render it inequitable to

interpose the bar." 30 C. J. S., Equity, § 120.

It would be inequitable, therefore, to bar the appellant from her rights as the lawful widow of Connelly, and certainly there is no reason why the appellee should be be enriched because of the fraud of Connelly, especially when she has suffered no prejudice because the appellant did not file her petition in this case at an earlier date. In order to establish the defense of laches, both lack of diligence and injury must concur. We do not think either of these elements has been established by appellee in this case.

We are of opinion that the appellant is the lawful widow of Boyd S. Connelly, and not the appellee.

*Decree reversed, with costs to appellee.*