## THOMAS *v.* HARDISTY ET UX.

[No. 294, September Term, 1957.]

524

526

*Decided July 8, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND and HORNEY, JJ.

*Warren Browning* for the appellant.

*Frank R. Long* for the appellees.

BRUNE, C. J., delivered the opinion of the Court.

Henry Granville Thomas, Jr., plaintiff below, appeals from an order of the Circuit Court for Montgomery County sustaining the demurrer of the defendants-appellees, Walter R. Hardisty and Jean T. Hardisty, his wife, to Thomas' bill to have a tax sale of certain property and a deed from the Collector of Taxes conveying the property to the appellees vacated and cancelled.

The bill alleges that Thomas is the owner of a tract of about nine and three-fourths acres of land located in the 10th Election District of Montgomery County, which is improved by a five-room dwelling, that Thomas acquired title to it by a deed duly recorded in 1936, that he and his immediate family have occupied the premises continuously since that year, and that Thomas is in possession of the premises. The bill further states that the Hardistys claim title to the property by virtue of an alleged tax sale made on April 12, 1948, and by virtue of a deed from the Collector of Taxes, dated September 10, 1950, and duly recorded, which purported to have been executed pursuant to a decree of the Circuit Court for Montgomery County in Equity Case No. 14527, in which the Hardistys were plaintiffs and H. Granville Thomas, Jr., was named as defendant.

Thomas' bill asserts that the tax sale was void because the advertisement thereof was not sufficient to identify and locate the property with substantial certainty, since it described it as "9 ¾ ac & Imps, Sweepstakes" and misdescribed it as located in the *4th* Election District and not in the *10th* where it actually is situated.

The bill challenges the jurisdiction of the Circuit Court in the foreclosure proceedings because of the erroneous description of the property, because of the alleged misnomer of the defendant ("H. Granville Thomas, Jr.", instead of "Henry Granville Thomas, Jr.", as shown by the tax records) and because of the alleged misstatement of the defendant's address as "unknown", though the tax records showed it to be Rockville.

Thomas also alleges that the decree in Equity Case No. 14527 is not to be found among the records of that case in

the Circuit Court, that no such decree is recorded among the judgment records and that the only records in Case No. 14527 now to be found are the docket entries.

The bill alleges that the price paid by the Hardistys at the tax sale was $19.04 and that the plaintiff believes the fair value of the land in controversy to be more than $15,000. Thomas tenders himself as ready and willing to pay to the Hardistys the above purchase price and all taxes subsequently paid by them on this property or assessed against it.

The defendants filed a demurrer and an answer. Since the case was disposed of solely by an order sustaining the demurrer, the answer is immaterial for present purposes. No opinion was filed by the Chancellor, but we understand from a certificate forwarded to this Court by direction of the Chancellor after the record has been transmitted that this order was based upon Section 113 of Article 81 of the 1957 Code. That Section protects from subsequent attack a final decree of foreclosure rendered under the Tax Sales sub-title of Article 81 (§§ 70-123, inclusive) [1] unless the attack is based upon lack of jurisdiction or fraud.

The defendants' demurrer seeks to set up five grounds upon which they claim the bill to be insufficient. The first rests upon an alleged fact which is not shown by the bill and it is therefore clearly invalid. The second is little better. It asserts that the bill alleges clerical errors on the part of the clerk's office, which (if true) the court could correct. We find no such allegations in the bill.

The third ground of demurrer is expressed in terms which are almost, if not quite, incomprehensible; and its meaning is not aided by the comment on this ground of demurrer contained in the defendants' brief in this Court.[2] Rule 373 of

1. Unless otherwise indicated, references to Sections made subsequently in this opinion will be to Sections of Article 81, as numbered in the 1957 Code.

2. Its actual text is as follows: "The legal presumption that the Court has the power to correct its errors would give this Court [the Circuit Court] the power to enter non [sic] pro tunc the recordation of the final decree, and as so entered, the time within which the Court could afford the relief prayed for has expired."

the Maryland Rules, which deals with demurrers in equity, incorporated by reference Rule 345 b. The latter requires a demurrer to "state in detail the question of law or insufficiency of substance upon which the demurrer is founded." This contemplates at least a reasonably understandable statement. We think that, because of its obscurity, the third ground of demurrer does not comply with Rule 345 b, and that it therefore might well be completely disregarded. We also think it useless to speculate extensively on just what it may have been intended to mean or its validity if taken to mean one thing or another. If we ascribe to it the greatest effect which, so far as we can see, it might have, it would invoke the provisions of Section 113 to which we have already referred and upon which the Chancellor rested her action in sustaining the demurrer. We shall consider later whether the alleged defects in the foreclosure proceedings make the decree (even if properly proved and established, *nunc pro tunc* or otherwise) and the deed purportedly executed pursuant thereto ineffective to transfer title to the premises to the defendants.

The defendants' fourth ground of demurrer is that the bill shows title in fee simple to be in them and that any remedy of the plaintiff should be by bringing "an action for a declaratory judgment, and particularly at law." The bill shows that the plaintiff claims title and is in possession. The defendants seem to concede, by their novel suggestion, that an action in ejectment would not be appropriate, but still to insist that the suit should somehow be at law. This objection, in effect, challenges equitable jurisdiction in a suit to quiet title brought by a plaintiff in possession. We think it is not sustainable. Equity jurisdiction over such suits has been recognized in this State for many years. *Cherry v. Siegert,* 215 Md. 81, 136 A. 2d 754; *Queen v. Anderson,* 191 Md. 522, 62 A. 2d 612; *Homewood Realty Corp. v. Safe Deposit & Trust Co.,* 160 Md. 457, 154 A. 58; *Rosenthal v. Donnelly,* 126 Md. 147, 94 A. 1030; *Steuart v. Meyer,* 54 Md. 454; *Polk v. Rose,* 25 Md. 153; *Holland v. Baltimore,* 11 Md. 186. See also 4 Pomeroy, Equity Jurisprudence (5th Ed.), Secs. 1398, 1399. We find nothing in Code (1957), Art. 16, Sec. 128

(originally enacted in 1955 and amended in 1957) which derogates from or in any way conflicts with this firmly established jurisdiction, nor does this suit even appear to have been brought under this comparatively new Section. (We do not imply that if it had been so brought, this suit would be barred by the proviso as to the scope of relief sought, upon which the defendants rely.)

The defendants' fifth ground of demurrer is laches. Here, too, we think that the demurrer must fail. There is no showing in the bill of any harm or loss to the defendants by reason of the delay in the bringing of this suit. *Queen v. Anderson, supra; Boehm v. Boehm,* 182 Md. 254, 34 A. 2d 447; *Connelly v. Connelly,* 190 Md. 79, 57 A. 2d 276; *Brashears v. Collison,* 207 Md. 339, 115 A. 2d 289. Cf. *McKenney v. McKenney,* 214 Md. 397, 135 A. 2d 423, and *Rettaliata v. Sullivan,* 208 Md. 617, 119 A. 2d 420, where prejudice from delay appeared from facts alleged in the bill.

Much history of our law relating to tax sales and the foreclosure of rights of owners of property sold for taxes may be found in the opinions of this Court in *Steuart v. Meyer,* 54 Md. 454 (above cited); *Hickey v. Peck,* 180 Md. 289, 23 A. 2d 711, and *Shapiro v. National Color Printing Co.,* 191 Md. 194, 60 A. 2d 679. The present Tax Sales Act (Code (1957), Art. 81, Secs. 70-123) was originally enacted by Chapter 761 of the Acts of 1943. It has been amended a number of times, but none of the amendments seems material in the present case. As shown by the *Shapiro* case, it is very similar to Chapter 540 of the Acts of 1941, which was applicable only to the City of Baltimore. The 1943 Act greatly reduced the hazards encountered by purchasers at tax sales but still preserved some substantial requirements which must be met in order that a valid title may be acquired through a tax sale and subsequent proceedings to foreclose an owner's right of redemption.

Among these are "the statutory requirements as to notice required to terminate the taxpayer's right to redeem from a tax sale," which this Court said in *James v. Zantzinger,* 202 Md. 109, 114, 96 A. 2d 10, "are mandatory and must be strictly followed." It is, of course, recognized that there is

an important public interest in marketable titles resulting from tax sales. See Sec. 97 of Art. 81 and *Oppenheimer v. Micbar Co.,* 192 Md. 192, 63 A. 2d 765, and *Thomas v. Kolker,* 195 Md. 470, 73 A. 2d 886. In those cases this Court sustained titles resulting from tax foreclosure proceedings under the 1943 Tax Sales Law, notwithstanding objections to the accuracy or completeness of the description of the property sold. This Court has also upheld tax foreclosure proceedings against attacks based upon the use of an old or erroneous address of the taxpayers, whose rights of redemption were being foreclosed, in cases where a correct address might have been ascertained and used, either easily or without great effort. *James v. Zantzinger, supra; Sanchez v. James,* 209 Md. 266, 120 A. 2d 836.

The provisions of the Tax Sales Law as to the persons who shall be made parties, what records must be examined in order to ascertain the persons having interests in the property, how unknown owners may be made parties, service of process and notice by publication (Secs. 102-107, inclusive) are considerably more exacting than those relating to the description of the property involved in the proceedings. Failure to comply with requirements as to joinder of parties and notice to persons who should be made parties has caused some proceedings to be held invalid for lack of jurisdiction to enter a decree foreclosing their rights, as in *Brashears v. Collison, supra,* and in *Holland v. Billingsley,* 208 Md. 635, 119 A. 2d 380.

The latter case also involved a description of property which was held insufficient. The pertinent statutory provisions relating to the description of property are outlined below. Sec. 76 (a) requires that the collector of taxes publish a notice of sale once a week for four weeks prior to the date of sale; and Sec. 76 (f) (4) requires that such "notice shall contain with substantial accuracy" a description of the property, which, if the property has no street number, shall describe the property as it is described on the collector's tax rolls, and further provides that "[i]f necessary to properly describe the property, the collector shall procure a description and plat of the same from the county or city surveyor * * *."

This paragraph also requires that if it is necessary to procure a description from the county or city surveyor, it shall be kept among the records of the collector's office and that the notice of sale shall state that such description is so on file and may be examined by anyone interested therein.

Sec. 83 provides for the issuance by the collector to the purchaser at a tax sale of a certificate of sale which shall describe the property substantially in accordance with the above provisions, except that if a description has been obtained from the surveyor, such description shall be included in the certificate.

Sec. 100 provides for the filing by the holder of a certificate of sale of a bill in equity to foreclose all rights of redemption. Sec. 102 deals with the contents of such a bill and requires that it contain (*inter alia*) "a description of the property in substantially the same form as the description appearing on the collector's tax roll."

In *Holland v. Billingsley, supra,* the tax roll described one of the lots in question as "part of Lot 2, approximately .519 acre at Arnold." The advertisement described it as "part of Lot 2, approx. 519 at Arnold." This Court, speaking through Judge Delaplaine, there said: "We hold that the omission of a decimal point before the figure '519' and the omission of the word 'acre' made the advertisement defective. Moreover, there was nothing in the advertisement specifically describing where the land was situated and what part of Lot 2 was to be offered for sale." The opinion at least implies strongly that the collector should have obtained a description of the land from the county surveyor. We think that the description in the instant case is at least as faulty as that in the *Holland* case.

The defect here is far more serious than those asserted in the *Oppenheimer* and *Thomas* cases above cited. In the *Oppenheimer* case, the ground of complaint was the lack of reference in the tax rolls, in the Treasurer's advertisement of the tax sale and in the certificate of sale (which was filed as an exhibit in the foreclosure suit) to the place of record of a plat, by liber and folio, showing the development or subdivision in which the two lots sold for taxes were located. They

were described by number, by the name of the subdivision and by the number of the election district in which they were located. (Some further information also appeared on the tax rolls.) In the *Thomas* case the principal complaint as to description was that the lots there in question were described on the tax rolls as unimproved, though there were actually some improvements thereon. In that case the taxpayer was personally served, and the certificate of tax sale filed with the bill showed the property to be improved. The taxpayer admitted being served with a copy of the bill, but denied having received a copy of the exhibit. This Court upheld the .foreclosure proceedings in both of these cases, and in the *Thomas* case stated that where the procedure *quasi in rem* established in the City of Baltimore under Chapter 540 of the Acts of 1941 (modified in some respects by Chapter 761 of the Acts of 1943) "is followed, defects in the prior proceeding are wholly immaterial." (195 Md. 474.)

Neither Sec. 76 (f) (4) nor any other provision of the Tax Sales Act undertakes to define what is necessary "to properly describe the property"—in other words, to state the circumstances under which the collector of taxes should obtain from the county or city surveyor a description or plat of the property. It does, however, seem reasonably clear that not any and every description of property contained on the tax rolls will necessarily amount to a proper description. *Holland v. Billingsley, supra,* supports this view, but it does not attempt to draw the line between the description there held bad and those which were upheld in the *Oppenheimer* and *Thomas* cases, neither of which was cited in *Holland v. Billingsley.* Neither did *Holland v. Billingsley* consider the extent to which deficiencies in the tax sale advertisement or certificate would or could be cured by the foreclosure proceedings. It did not profess to overrule *Thomas v. Kolker, supra,* on this matter; nor do we think that such an effect should be ascribed to it.

It is well settled that our present tax foreclosure proceedings are *in rem* or *quasi in rem.* See *Shapiro v. National Color Printing Co., Oppenheimer v. Micbar Co., Thomas v. Kolker, James v. Zantzinger* and *Sanchez v. James,* all cited

534

above. (All but one of these use the term *"in rem"*.[3]) The analogy to mortgage foreclosure proceedings was pointed out in *Thomas v. Kolker* and is recognized by statute in Sec. 122, which provides that a person acquiring title under the Tax Sales Law shall be entitled to a writ of *habere facias possessionem* as if he had acquired title by virtue of a mortgage foreclosure. We think that a proceeding *in rem* (or *quasi in rem*) should describe the *res* with sufficient accuracy so that the description given in a notice of publication would be sufficient to identify the property involved with at least reasonable certainty. A description which would be sufficient to sustain a suit for the specific performance of a contract for the sale of real estate would certainly meet this test. Cf. *Baker v. Dawson*, 216 Md. 478, 141 A. 2d 157; *Maryland State Housing Co. v. Fish*, 208 Md. 331, 118 A. 2d 491. What, if any, lesser degree of accuracy would do so, we need not attempt to decide in this case. It is a matter of common knowledge that tax roll descriptions are often rather brief, but the Tax Sales Law evidently contemplates that they will ordinarily be sufficient.

In the instant case, the description is not merely brief, but clearly erroneous in describing the property as being located in one election district when it is actually located in another. We think that such a description is not sufficient to give notice to the owner of the property that his rights are to be foreclosed. This vice pervades not merely the advertisement of the tax sale (which alone might not be fatal) but also, we believe, the notice of publication in the suit to foreclose the owner's right of redemption. We think it a fair inference that the description in the order of publication which is said to be missing along with other papers in the foreclosure suit is in accord with the description in the deed which the plaintiff seeks to have annulled. There was no personal service on the appellant or actual notice to him of the proceedings, and hence he had no opportunity to correct the clearly wrong de-

---

**3.** As both the *Shapiro* and *Thomas* cases show, tax foreclosure proceedings may also become *in personam* proceedings through service of process on the defendant.

scription. Cf. *Ballard v. Hunter,* 204 U. S. 241. No policy in favor of protecting tax titles acquired through proceedings *in rem* can make a description which describes land as situated in one part of a county adequate to describe land situated in another. We are accordingly of the opinion that, on the case as made by the bill of complaint and exhibits thereto, the Circuit Court lacked jurisdiction to render a decree foreclosing the rights of the plaintiff to redeem property in the 10th Election District, that the tax sale was also invalid because of the incorrect description, and that the bill makes out a case for the annulment of the tax sale and of the deed purportedly executed pursuant to the decree in the foreclosure suit.

We believe that there is nothing inconsistent between this holding and Sec. 114 which limits the effect of a decree containing a description varying from that contemplated by the statute.

One question which has been suggested in this case, but which is not raised or discussed in either brief is whether or not the decree in the foreclosure case is open to collateral attack. The appellant does not directly seek to reopen that decree, but the annulment of the deed purportedly executed pursuant thereto would have substantially the same practical effect; and we have considered the case much as if this were in form and substance a proceeding to reopen that decree. (Perhaps this suit does not seek to reopen the decree because the decree itself appears to have been lost.) The above question may arise from the mere fact that Section 113 is involved.

In *Oppenheimer v. Micbar Co., supra,* which was decided in 1949, no question was raised by either party as to whether or not the validity of a final decree passed under Section 112 could be attacked collaterally in a specific performance suit. This Court held the decree conclusive and stated (192 Md. at 195-196) that: "no application can be entertained to reopen that decree except on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose. Code, 1947 Supplement, Article 81, Section 90M, Acts of 1943, Chapter 761, Section 90M [now Sec. 113 of the 1957 Code]. No such attack has been made on the decree foreclosing the rights of redemption to the lots here in question."

The last sentence suggests that the court considered a collateral attack permissible if based, and only if based, upon grounds which would warrant a reopening of the decree. Otherwise, it would seem that this phase of the case would have been disposed of simply by pointing out the obvious fact that defense to a suit for specific performance based upon alleged defects in a tax foreclosure suit was not a proceeding to reopen the decree.

The general rule is that lack of jurisdiction over either the parties to a suit or the subject matter thereof renders a judgment or decree a nullity and that a judgment or decree rendered where jurisdiction is wanting is open to collateral attack. This rule has probably been more frequently stated than found applicable in cases in this State. The rule was recently restated, but found in applicable. *Board of Medical Examiners v. Steward,* 207 Md. 108, 113 A. 2d 426, in which the opinion was written by Judge Henderson. At 207 Md. 112, he said: "A judgment that is a nullity, because the court lacked jurisdiction to render it, may be disregarded, even in a collateral proceeding, * * *."

A similar statement will be found in Judge Markell's opinion in *State v. Ambrose,* 191 Md. 353, at 369, 62 A. 2d 359. See also the cases therein cited, which include *Pennoyer v. Neff,* 95 U. S. 714, *Staley v. Safe Deposit & Trust Co.,* 189 Md. 447, 455, 56 A. 2d 144, *Keen v. Keen,* 191 Md. 31, 38-40, 60 A. 2d 200, 203-205, *Hanley v. Donoghue,* 59 Md. 239, and *Wilmer v. Epstein,* 116 Md. 140, 145, 81 A. 379.

For other statements to like effect, see also *Spencer v. Franks,* 173 Md. 73, 80-81, 195 A. 306; *Long v. Long,* 62 Md. 33, 62; *Fooks' Exrs. v. Ghingher,* 172 Md. 612, 619, 192 A. 782, cert. den. 302 U. S. 726; *Graham v. Graham,* 190 Md. 434, 444, 59 A. 2d 180; and *Phelps, Juridical Equity,* §§25, 179; 49 *C. J. S., Judgments,* §401, p. 794.

We do not think that either Sec. 112 or Sec. 113 undertakes to give validity to a void decree. Any attempt to do so would appear to involve a denial of due process of law. Nor do we think that either of these Sections seeks to prevent a collateral attack upon such a decree. Section 113 by impliedly permitting an application to reopen a decree for lack of juris-

diction or fraud does not say that a decree void for want of jurisdiction is immune from collateral attack. We think that it would be going very far to draw from this implied authorization an intention to prevent the operation of a well established rule of law, particularly when to do so would raise a serious constitutional question as to due process. In addition, it would seem to be an unnecessary refinement to make a distinction between an application to reopen a decree because of lack of jurisdiction to enter it and a collateral attack intended to show that the decree is a nullity for precisely that same reason.

In this view of the matter it is unnecessary to consider other alleged defects in the foreclosure proceedings which the plaintiff asserts or to consider whether Sec. 17 of Art. 57 of the 1957 Code would be a bar to any claim to the land by the defendants, as the plaintiff claims, or has been repealed, as the defendants claim.

> *Order reversed and case remanded for further proceedings not inconsistent with this opinion; the costs to be paid by the appellees.*

HAMMOND, J., filed the following concurring opinion.

I concurred in the result in this case because Code, 1957, Art. 57, Sec. 17, seemed to insure the title to the property of the landowner in possession against any rights of entry by the holder of the tax title who had been quiescent for over five years. That section requires an entry or an action to bring about the right of entry to any land in Montgomery County, or so much of Takoma Park as is in Prince George's County, that has been sold for taxes, within five years after the day of sale.

In the case before us the landowner lived in the property before the tax sale and has continuously remained in possession for over seven years since the tax sale. I think that Sec. 17 of Art. 57 was not repealed by the tax sales law of 1943 and that it entitled the landowner to the relief he sought in his bill to quiet title. As I read the section, it applies only

to those who seek to enter and not to those already in possession. There would seem to be no necessity, under the statute, to apply the period of limitations to one already in possession, who seeks no more than a declaration of his right to remain in possession.

The decision of the majority was that the court lacked jurisdiction in the proceedings to foreclose the right of redemption because the description of the property used in the tax sale and in the foreclosure proceedings was inadequate and irregular. The heart of the majority opinion is found in the sentence: "No policy in favor of protecting tax titles acquired through proceedings *in rem* can make a description which describes land as situated in one part of a county adequate to describe land situated in another." The property was described as owned by Henry Granville Thomas, Jr., and as consisting of "9¾ ac & Imps, Sweepstakes", located in the 4th Election District of Montgomery County. The property is actually situated in the 10th Election District. The mistake in the election district sounds more serious when described arithmetically than it actually is, geographically, since the 4th and 10th Election Districts of Montgomery County are contiguous, and the land is in the same part of the County as the description indicates it to be. A description in a tax sale has two purposes—to warn the owner and to attract buyers. *Josenhans, Inc. v. Jenkins*, 203 Md. 465, 472. The description we are concerned with might have been inadequate to notify prospective purchasers of the location of the property and, so, insufficient to support a tax sale that was duly attacked prior to the decree foreclosing the right of redemption. However, if the owner had read the description either in the advertisement of the tax sale or in the notice by publication in the foreclosure proceedings, he would instantly have known that his property was being referred to. This fact makes it plain that the Circuit Court for Montgomery County had jurisdiction. Although the proceeding is *in rem* and he need not have been, the landowner was a resident, the land is in the County, and the advertisement could not have failed to warn the landowner H. Granville Thomas, that his nine and three-quarter acres in Montgomery County, known

as Sweepstakes, was being dealt with. In determining the validity of the proceedings to foreclose only the effect of the description on the owner need be considered.

The Tax Sales Act of 1943 sought to make tax sales immune from attacks not asserted in the proceedings to foreclose the right of redemption other than lack of jurisdiction or fraud in that proceeding. Since the passage of the Act, this Court has faithfully protected its purpose. As a result, the intent of the Act to make tax sales titles valid and marketable has been effectuated. The majority opinion cannot fail seriously to weaken, if not to destroy, the legislative purpose and the prior holdings of this Court in carrying out that purpose in *Thomas v. Kolker*, 195 Md. 470; *Oppenheimer v. Micbar Co.*, 192 Md. 192; *Shapiro v. National Color Printing Co.*, 191 Md. 194; *Gathwright v. Mayor & City Council of Baltimore*, 181 Md. 362; *James v. Zantzinger*, 202 Md. 109; and *Sanchez v. James*, 209 Md. 266. Never before have prior irregularities been allowed to effect a foreclosure decree or to serve as the basis of a finding of lack of jurisdiction. Now I fear, tax titles have again been made doubtful and litigation as to them invited by unnecessarily—and I think erroneously—basing the decision on a very unsettling ground when the same result properly could have been reached on another ground.