# WILMER MECHLIN v. STRONGHOLD, INC.

[No. 1204, September Term, 1980.]

*Decided March 12, 1981.*

The cause was argued before GILBERT, C. J., and LOWE and MACDANIEL, JJ.

*Clater W. Smith, Jr.,* with whom were *Shoemaker & Smith* on the brief, for appellant.

*Walter C. Martz, II,* with whom were *Martz & Hayward* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

Until his death in 1932 George W. Stewart was the owner of a 26 ¼-acre tract of land on Sugarloaf Mountain

prophetically named "Foul Play." In 1947 the property was sold at a tax sale to Edward D. Storm, redemption foreclosed in 1948, and through mesne conveyances record title ultimately vested in appellee. In 1961 the heirs of Stewart collected the excess funds from the tax sale.

On April 16, 1964 appellant contracted Foul Play's purchase from the heirs of George Stewart for $1,500.00, acknowledging it to be subject to "a purported conveyance to Ed. D. Storm . . . pursuant to a tax sale April 14, 1947. . . ." The deed therefore was not executed until October 16, 1972 following a decree obtained by the heirs of Stewart on February 24, 1970 from the Circuit Court for Frederick County, which declared the 1947 tax sale and subsequent foreclosure decree "null and void."

Following appellant's contract with the Stewart heirs but before their successful nullification of the tax sale upon which appellee's claim to Foul Play's ownership rested, appellee purchased several other pieces of land which lay between Foul Play and "the most convenient public road, a County road known as Stewart Hill Road." Chagrined at such foul play in denying convenient access, appellant returned to the forum which made his ownership possible and sought further relief to enhance its further enjoyment. He demanded a "way of necessity" over appellee's after-acquired property.

Ironically, after having defeased appellee from its claim of title, appellant now contends that appellee owned it all along. He first contends that

"The Decree of February 24, 1970 holding null and void the tax sale and decree of foreclosure did not bar the tax sale purchaser from acquiring legal title to the Foul Play tract on ratification of the tax sale."

The obvious purpose of this belated concession of prior ownership in appellee is to meld the Foul Play tract and the properties purchased by appellee between Foul Play and the road into one single tract owned by appellee. Then appellant points to

"The Decree of February 24, 1970, as a judicial severance of properties commonly owned by Appellee, creat[ing] for the Foul Play tract a way of necessity across intervening property owned by Appellee otherwise barring its access to a public road."

Anticipating the obstruction to his reasoning implicit in *Shpak v. Oletsky,* 280 Md. 355 (1977), *i.e.,* that the necessity for the way must exist at the time the original purchase contract was executed, appellant contends that he

". . . did not purchase the Foul Play tract from the Stewart heirs by the purchase contract of April 16, 1964."

To reach that conclusion he must again contend completely contrary to his former contentions, that appellee was the "legal owner of record of the tract and that the Stewart heirs had only equities of redemption which could not be asserted unless it could be established in a court proceeding that, for lack of jurisdiction, their equities were not foreclosed by the foreclosure decree."

Appellant cannot have it both ways. In the title proceeding that concluded in appellant's favor on February 24, 1970, appellant produced evidence and argued that appellee was not the owner of the tract because its predecessor from which title had been supposedly derived had failed to conform to Md. Ann. Code art. 81, § 105.

"§ 105 *Affidavit of search.*

Every bill of complaint to foreclose the right of redemption filed against an unknown owner as hereinbefore provided shall have attached thereto an affidavit by the person making the search that the owner or owners of the property or a part thereof are unknown, although a complete search of the records as aforesaid for a period of at least forty years immediately prior to the institution of the suit has been made."

Commenting in its memorandum opinion upon appellant's evidence of this failure by appellee's predecessor, the court

concluded that the failure to name known owners as parties was a *jurisdictional* defect nullifying the subsequent foreclosure decree.

> "Article 81 provided that an affidavit of search shall be filed indicating that a search had been made of the Land Records and Register of Wills Records of Frederick County for a period of forty years immediately prior to the institution of the foreclosure proceedings. The evidence clearly shows that a search of the Register of Wills Records immediately prior to filing the foreclosure proceedings would have revealed that the owners of this property were three of the petitioners in this case, namely, George W. Stewart, Glenn S. Sewell and Elmer Shamwell, and their whereabouts readily known. Nevertheless the petitioners were not named as defendants, no subpoenas were issued and no order of publication was published against them or any of them by name. The Court therefore was without jurisdiction to foreclose the rights of redemption of these three petitioners."

The decree that followed did not simply reopen the prior foreclosure decree, but further declared both the decree and the prior tax sale upon which it was based "null and void."

There are but two grounds upon which a tax foreclosure decree may be "reopened," lack of jurisdiction and fraud. The statute so providing states:

> "No application shall thereafter be entertained to reopen any final decree rendered under the provisions of this subtitle except on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose; provided, however, that no reopening of any final decree on the ground of constructive fraud in the conduct of the proceedings to foreclose shall be entertained unless the application therefor with regard to decrees heretofore rendered is made within one year following June 1, 1968, and with regard to decrees hereafter rendered is made

within one year from the date of the final decree. If the final decree of the court foreclosing all rights of redemption is set aside on the ground of lack of jurisdiction or constructive fraud, the amount required to redeem shall be the amount required by the provisions of this subtitle, and in addition thereto, the reasonable value, at the date the decree is set aside, of all improvements made on the property by the purchaser and his successors in interest." Md. Ann. Code art. 81, § 113.

It is significant that the court below did not *reopen* the former decree in the sense of providing for further hearings, but instead simultaneously declared it a nullity based upon lack of jurisdiction. Obviously it followed the reasoning of *Brashears v. Collison,* 207 Md. 339 (1955) and *Holland v. Billingsley,* 208 Md. 635 (1955), which treat the failure to discover and make parties to foreclosure, owners of property the names of whom are easily ascertainable upon search of the records. Such failure provides a jurisdictional defect for want of necessary parties. Had the court turned its decision upon failure to file an affidavit (if such were the facts) the nullification of the decree for lack of jurisdiction may have been inappropriate. *See Jannenga v. Johnson,* 243 Md. 1 (1966); *but see, Hauver v. Dorsey,* 228 Md. 499, 503 (1962), distinguishing *Brashears* and *Holland,* both *supra.*[1] *Hauver* clearly held that a failure to file an affidavit at all, as required by § 105, is not a jurisdictional defect such as would void a decree setting aside an owner's rights of redemption. It is rather a procedural defect which may, however, constitute a constructive fraud providing an alternative ground for setting foreclosure aside, subject to statutory limitations. *Jannenga v. Johnson, supra.*[2]

---

[1]. It is interesting to note that while *Hauver, supra* at 503, cites *Thomas v. Hardisty,* 217 Md. 523, 533 (1958), as authority that "tax foreclosure proceedings are *in rem* and not *in personam,"* a footnote in *Hardisty* states that "both the *Shapiro* [*v. National Color Printing Co.,* 191 Md. 194 (1947)] and *Thomas* [*v. Kolker,* 195 Md. 470 (1950)] cases show tax foreclosure proceedings may also become *in personam* proceedings through service of process on the defendant." 217 Md. at 534 n. 3.

[2]. The propriety of the finding of want of jurisdiction in the Court's opinion preceding the February 24, 1970 decree is not before us and was never appealed. The 1970 decree declaring the tax rule and foreclosure

It is just such a distinction that defeats appellant's syllogism, which briefly repeated is (1) common ownership by appellee prior to severance, (2) judicial severance, and (3) reasonable necessity at the time of severance. The foundation of the syllogism is the common ownership of the severed tract and the property upon which the way of necessity is sought to be imposed. Appellant relied upon both Md. Ann. Code art. 81, § 112 and *Bowie v. Ford,* 269 Md. 111 (1973), to support his theory of common ownership by appellee.

In *Bowie v. Ford,* ownership derived from a tax sale which had been obtained by actual fraud. To rectify the fraud, the Court of Appeals found it necessary to circumvent the barrier imposed by a statute similar to, but more restrictive than, § 113 because the tax sale occurred prior to 1944. That statute, § 99A, provides:

> "When any tax sale made prior to January 1, 1944, has been finally ratified, then no court of equity or law in this State shall on and after June 1, 1966, entertain any proceedings to set aside or modify any title to any interest obtained in such sale."

The Court of Appeals decided that while it had no jurisdiction to "set aside or modify any title to any interest obtained in such sale," it was not precluded from declaring what interest had been obtained in the tax sale. The Court declared that the interest obtained was only that of a trustee *ex maleficio, i.e.,* that of a holder of bare legal title, because the fraud imposed upon the purchaser at the tax sale formed a constructive trust as a matter of law, with the equitable title remaining in the rightful heirs of the original owners that the trustee had duped.

Appellant's reliance on this case is for its holding that the defrauding tax sale purchaser had nonetheless obtained legal title by the tax sale, and he reasons that such a title so obtained carries other usual incidents of legal ownership.

---

decree null and void based upon that finding was derived at the instance of appellants and has been for a decade, no longer subject to attack.

The Court in *Bowie,* he notes, pointed out that were there a bona fide purchaser in that case, the bare legal title of the constructive trustee would have been sufficient to pass good title to a good faith purchaser for value. *Id.* at 119. Presumably, then, the reasoning of appellant is that appellee also obtained at the very least "bare legal title," and then more by virtue of § 112. He reasons that all other indicia and responsibilities of ownership gravitated to appellee during that "ownership" period and adhered throughout. And upon divestiture, the responsibility to provide access to the property remains with appellee to the same extent it would have, had it been a willing grantor. That theory is especially appropriate here, according to appellant, because the interest acquired by appellee in the Foul Play tract was more than the bare legal title acquired in *Bowie,* since appellee had not committed a fraud to obtain it.[3] The rub, of course, avoided if recognized by appellant, is that appellee *never* owned the Foul Play tract.

*Bowie* is instructive if inapposite in that it teaches us first to determine what interest was acquired at the tax sale, which was subsequently declared null and void along with the decree upon which appellee's title had been based. The nullity, predicated upon lack of jurisdiction, conveyed *no interest* in Foul Play to appellee because a court without jurisdiction can convey nothing more than a purported grantor who has no title to pass. This is especially true where the jurisdictional defect is for lack of necessary parties, which parties are the source of ownership of the very interest the court purports to convey to the tax sale purchaser.

We emphasized in the commencement of this opinion that both the sale and foreclosure decree were declared "null and void" by the subsequent decree of February 24, 1970. Notwithstanding the formality of language thereafter "reopening and rescinding" that invalid decree, the effect of

---

**3.** Section 112 provides that upon compliance with the tax sale foreclosure procedures set forth in the Code, and upon expiration of the times therein established, the court shall pass its decree foreclosing equity of redemption which decree shall vest an "absolute and indefeasible" title in fee simple to the property.

it was the same. The prior decree, being a nullity, had conveyed nothing to appellee. Its effect was as described by *Freeman on Judgments,* sec. 322, as quoted with approval by *Fooks' Executors v. Ghingher,* 172 Md. 612, 619, *cert. denied,* 302 U.S. 726 (1937):

> " 'A judgment void upon its face and requiring only an inspection of the record to demonstrate its invalidity is a mere nullity, in legal effect no judgment at all, conferring no right and affording no justification. Nothing can be acquired or lost by it; it neither bestows nor extinguishes any right, and may be successfully assailed whenever it is offered as the foundation for the assertion of any claim or title. It neither binds nor bars any one. All acts performed under it and all claims flowing out of it are void. The parties attempting to enforce it may be responsible as trespassers. The purchaser at a sale by virtue of its authority finds himself without title and without redress. No action upon the part of the plaintiff, no inaction upon the part of the defendant, no resulting equity in the hands of third persons, no power residing in any legislative or other department of the government can invest it with any of the elements of power or of vitality. * * * Such a judgment has been characterized as a dead limb upon the judicial tree, which may be chopped off at any time, capable of bearing no fruit to plaintiff but constituting a constant menace to defendant.' "

Such a judgment was not only merely erroneous because of some irregularity in the mode of proceeding or error on the part of the Court in the application of the law of the case, but being a judgment rendered *without jurisdiction,* it was absolutely void and was subject to being assailed at all times and in all proceedings. *State v. Ambrose,* 191 Md. 353, 369 (1948).

*Judgment affirmed.*
*Costs to be paid by appellant.*