JOSENHANS, INC. ET AL. *v.* JENKINS ET UX.

[No. 47, October Term, 1953.]

466

*Decided January 8, 1954.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*William S. James* with whom were *McComas & James* on the brief, for the appellants.

*Broadnax Cameron* and *Paul F. Due* for the appellees.

HAMMOND, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court for Harford County in a declaratory proceedings to quiet title, declaring George Jenkins and Anne M. Jenkins, his wife, the appellees, the owners of a forty acre unimproved tract of land in that County. No challenge to equity jurisdiction has been made and most of the controlling facts are undisputed. The decisive question presented is whether a 1910 tax sale of the property was valid or invalid under Chapter 468½ of the Acts of 1906 applicable only to Harford County, the statute law which controls the case; if valid the appellees prevail, if invalid the appellants are the owners of the property.

The chain of title begins by a deed dated January 19, 1907, wherein Nicholas H. Leight and wife conveyed to Frederick W. Josenhans and Katherine Josenhans, his wife: "all that piece or parcel of land situate in the First Election District of Harford County aforesaid, being part of a tract called 'Addition to Sweaty Banks' ", which was more particularly described by a metes and bounds description as containing forty acres more or less.

Thereafter, in 1909, the State and County taxes assessed against the property were unpaid and the Treasurer of Harford County offered the land at tax sale. The Treasurer's advertisement read: "All that part of a tract called 'Pine Grove', together with improvements thereon, on road leading from Little Falls to Magnolia, containing forty acres, more or less, described in a deed from Nicholas J. Leight and wife to Fred W. Josenhouse, dated January 19, 1907, and recorded amongst the Land Records of Harford County

in Liber W.S.F. No. 120, folio 231, and assessed to the said Fred W. Josenhouse for 1909 taxes, . . ."

Prior to the advertisement, the Treasurer, as required by Section 262 L of Chapter 468½ had published in two Harford County papers a warning list of delinquent taxpayers as of the first day of February, 1910, with the amounts in which they were in arrears; this list shows in one paper the name of "Josenhans, Fred'k. W." and in the other, "Josenhans, Frederick W."

Thereafter, the sale was made by the Treasurer and duly reported to the Circuit Court, the report of sale listing the taxpayer as Fred. W. Josenhouse. No objections or exceptions were made to the sale within the time prescribed in the order *nisi* and the sale was duly ratified and confirmed on the 27th day of April, 1910. No redemption was made and the Treasurer of Harford County, on April 15, 1912, executed and delivered a deed of the property to the tax sale purchaser, Harry A. Whitaker. By means conveyances the appellees claim from Whitaker.

From 1917 until the institution of this action, all State and County taxes on the land have been paid each year by both the appellants and the appellees, except in 1935. In that year, after the death of Frederick W. Josenhans, the members of the family, seemingly for some reason connected with the settlement of the estate, deliberately allowed the property to be sold for non-payment of 1935 taxes and arranged that it be purchased by a family corporation called Frederick W. Josenhans, Inc. The assessment books and tax records for Harford County between the years 1910 and 1917 have been either destroyed or lost, and therefore are not available to show the assessments for this period.

The appellees contend—the Court below agreed—that the 1910 tax sale is presumptively valid, and should not be set aside, because: ". . . the provisions of law . . . appear to have been substantially complied with" which is enough under the provisions of Section 262 N of Chapter 468½. In accepting this contention the trial

Court said that the appellants did not meet the burden of proof which Section 262 N expressly imposed on them as the exceptants to show the invalidity of the sale when they failed to show that the property was not assessed, in 1909, to Frederick W. Josenhouse. The appellants answered that they could not show the assessment because the records of Harford County prior to 1917 had been lost or destroyed. The Chancellor replied that since the law imposed on them the burden the reason why they could not bear it was legally unimportant. Seeing this point as controlling, the Chancellor held that the discrepancies in the advertisement of sale between the record owners and description were not enough to prevent a substantial compliance with the requirements of the law.

The appellants argue that the County Commissioners, as the statute required them to do, certified to the Treasurer the correct names of the taxpayers and the property assessed to each; that the Treasurer thereupon opened his books, placing therein the name of the taxpayer, so certified, and the amount of the assessments; and that this being so, it is to be found that the tax sale was advertised under the name of one who was not a taxpayer assessed for the year in question. They go further and say that this mistake and the reference to the property as being part of Pine Grove, rather than as an "Addition to Sweaty Banks", which was the tract name used in the deed, coupled with the use of an erroneous name of the grantee in the description, is enough to mount up to failure to substantially comply with the law, so that the sale was invalid. We think the appellants have the better of the argument.

Section 262 A of Chapter 468½ directed the County Commissioners of Harford County to: "certify to the treasurer the names of the taxpayers of the county arranged according to election districts and the amount of property with which each is assessed, . . ." This section then required the treasurer to: "open upon his

books proper accounts crediting each item so levied under its proper head, . . ." and he was to: ". . . place the names of the taxpayers and the several amounts with which they are assessed upon his books, . . ." We think the appellants are correct in their contention that we must presume that the County Commissioners did as the law said and that the County Treasurer faithfully performed his part of the task of entering taxpayers on the records. That this presumption was true is indicated by the advertisements of the list of delinquent taxpayers published by the Treasurer. No actual explanation has been given or suggested why the name of Josenhans, which appeared in both newspapers, was not the name furnished by the County Commissioners to the Treasurer and by him entered on his records as the person responsible for the taxes on the property involved in this case. The first time the name is utilized by the Treasurer in his official capacity, it appears in its correct form. The only reasonable inference is that the mistake occurred after making up the list of delinquents and that it was only after this that the name "Josenhouse" was first used.

Section 262 L of Chapter 468½ directed the Treasurer to make up a list of delinquent taxpayers as of the first day of February in each year. If the taxes were not paid by February 23, the Treasurer was to: ". . . make up a list of all delinquents assessed with real estate, giving the name of the persons assessed with a brief description of the property, the district of its location and such references to conveyances as will render the same possible of ﹐identification, together with the amounts of taxes due and in arrear thereon, . . ." with a notice appended that if said taxes are not paid before the second Monday in April, the treasurer will proceed to sell the property. It is in the giving of this notice that the mistake occurred in the spelling of the name of the taxpayer. It appears in the advertisement published in the newspapers the requisite number of times before April 1, 1910 as "Josenhouse",

both in the reference to the grantee in the deed and as the taxpayer to whom the property is assessed. The description of the property refers to it as: ". . . part of a tract called 'Pine Grove'" and it is said to be described: "in a deed from Nicholas J. Leight and wife to Fred W. Josenhouse. . ." The name having been first used correctly by the Treasurer's office, it is difficult to escape the conviction that the handwriting of the scribe who had entered the name originally led the one who prepared the advertisement of sale to read the last three letters of Josenhans as "ouse" instead of "ans".

The appellees say that the burden of showing the invalidity of the sale is not met merely by showing the facts we have set forth. The burden which the laws similar to Chapter 468½ place upon an exceptant to a tax sale was set forth by this Court in *Free v. Greene,* 175 Md. 36, which points out that in such cases the order of ratification: ". . . is *prima facie* evidence of the correctness of the acts of the collector or treasurer, which, however, only means that it is necessary for the party attacking it to offer evidence to prove its incorrectness and upset a sale." We think that the appellants, by offering evidence of the correct use of the name by the Treasurer in the notice of delinquent taxpayers went as far as they must on this point and need not demonstrate that the name of Frederick W. Josenhans was on the records in 1909 as the name of the taxpayer.

We pass then to whether the use of the name Josenhouse and the reference in the advertisement to the property as part of Pine Grove, rather than as Addition to Sweaty Banks, added to the fact that the grantee in the deed is said to be "Fred W. Josenhouse" instead of Frederick W. Josenhans, is such a deviation from the requirements of the statute as to invalidate the sale. The purpose of an advertisement of tax sale is two-fold: first, to apprise the owner that a proceeding is pending which will divest him of his

property unless arrested by the payment of his taxes; and second, to inform the public as potential buyers what particular property is to be offered for sale. "If both, or if either, of these objects be defeated by the form of the advertisement or by the description which it gives of the property, then, obviously, the designs of the law in requiring public notice to be given have not been subserved—the proceeding is irregular—and the sale, if made, will be void." *Richardson v. Simpson*, 82 Md. 155. The first purpose will be defeated if the name of the owner is incorrectly given and the description of the property is such that it will not be recognized by him. *Riverdale Church v. Pugh & Co.*, 154 Md. 550, recognizes the fact that the use of the correct name plays this part in the sufficiency of the advertisement, although it found the name correctly given in that case. *Marx v. Hanthorn*, 148 U. S. 172, 37 L. Ed. 410, held that under the statutes of Oregon, which were substantially equivalent to those which control this case, the notice and advertisement must give the correct name of the taxpayer to whom the property is assessed and that the name of "Ida J. Hawthorn" is not the equivalent of "Ida J. Hanthorn". See also Meyer *et al. v. Kuhn et al.*, 65 F. (4th Cir.) 705, at 712, 713; and cf. *White v. McClellan*, 62 Md. 347.

The second requirement of an advertisement of sale will be defeated if both the owner and potential buyers, are misled as to the land to be sold. It may well be assumed that Frederick W. Josenhans, owning a tract of land known as "Addition to Sweaty Banks" might not be alerted by an advertisement of sale for a tract called "Pine Grove", even though the grantee in the deed to the property was identified as "Fred W. Josenhouse". It may also be assumed that a potential buyer inspecting the land records would have a real doubt that the tract advertised as part of Pine Grove was the same as the land referred to in the deed as Addition to Sweaty Banks. It is our view that the error in the name of the taxpayer and the discrepancies in

the advertisement, together are sufficient to require a holding that the essentials of Section 262 L of Chapter 468½ of the Acts of 1906 were not substantially complied with. This Court said in *Richardson v. Simpson, supra,* at page 159 of 82 Md., in speaking of the presumption of regularity of a tax sale and the burden cast upon an exceptant to show its invalidity: "It seems merely to relieve the purchaser of the *onus* of proof, and to cast the burden of showing the illegality of the proceedings upon the party resisting the sale. . . Whilst the burden of proof is thus shifted, still the validity of the sale depends on there having been a substantial compliance on the part of the collector, with all the essential requirements of the statute. This is in no manner dispensed with." *Waring v. National Savings & Trust Co.,* 138 Md. 367; *Griffith v. Lynch,* 182 Md. 34, 31 A. 2d 616; and *Diener v. Wheatley,* 191 Md. 690, 62 A. 2d 783.

The appellees say that since the advertisement of the sale and all subsequent notices and proceedings referred to the person assessed as "Josenhouse", and since the assessment of the property on which taxes were paid by the Josenhans family from 1917 to 1934, was in the name of Josenhause, necessarily the property was originally assessed to Josenhouse. Our holding that the use of the correct name in the Treasurer's publication of the delinquents implies that the assessment was in the name of Josenhans, is an answer to the first part of the contention. As to the second part, there is no showing or reasonable inference that the assessment remained on the tax rolls after the 1910 tax sale. It may have been replaced by chance or design sometime between 1910 and 1917. Certainly, since it appears from 1917 to 1934 as Josenhause, it did not either remain or reappear in identically the same form. The variation of the spelling would seem to lend weight to the belief that the handwriting of the one who originally entered the name on the Treasurer's list was responsible for the variations in the form of the name.

To offset the effect of the use of the name "Pine Grove" in the advertisement, the appellees offered the testimony of Albert P. Close, a member of the Harford County Bar, who was familiar with the searching of titles, and conveyancing. He produced a deed recorded in 1867, describing three tracts of land aggregating some eight hundred acres, which were referred to as Pine Grove Farm. He carried the chain of title down to 1907. As a result, his opinion was that the forty acre tract came out of: ". . . a piece or tract of land known as Pine Grove or Piney Grove Farm". He was unable, however, to plot any of the deeds and could not state how the forty acres fitted in with or came out of the eight hundred acres. He said also that between 1907 and 1867 there was nowhere in the chain of title any reference to Pine Grove or Piney Grove Farm. The appellees then called a witness who lived close to the property and had been familiar with the neighborhood since 1910. He said that he had always understood that the forty acre tract was "Piney Grove". We cannot impose upon a prospective purchaser of land offered for sale by reason of non-payment of taxes, under Chapter 468½ of the Acts of 1906, the requirement that he be an experienced title searcher and conveyancer or a lifelong resident of the neighborhood. Indeed, the imposition of such a requirement would not bring about the result the appellees seek in this case, because the title records showed no use of the name Pine Grove for forty years, and the evidence of the one neighbor was not that the land was generally known in the community as Pine Grove, but merely that he so knew it.

Since we find that the 1910 tax sale did not divest the Josenhans of title because of the misuse of the name and mistakes in the advertisement, it is unnecessary to decide whether the Treasurer sold too much of the land or the adequacy of the price; nor is it necessary to discuss the effect of the 1935 tax sale. The purchaser at that sale was the nominee of the

476

Josenhans family, a controlled family corporation, so that the appellants have the power to put the record title in whatever form they deem appropriate.

This is not a case which turns upon the question of fact nor the credibility of witnesses. The decision of the Chancellor was based on an interpretation of the law which applied and we feel that his decision was erroneous on the undisputed facts.

> *Decree reversed, with costs, and case remanded for passage of an appropriate decree.*