910 A.2d 536

**TAXI, LLC**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE CITY, et al.**

**No. 2023, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

Oct. 31, 2006.

David C. LeTourneur, Baltimore, for appellant.

Kyriakos P. Marudas (Ralph S. Tyler, City Solicitor, on brief), for appellee.

Panel HOLLANDER, EYLER, DEBORAH S., and BARBERA, JJ.

EYLER, DEBORAH S., J.

In the Circuit Court for Baltimore City, Taxi, LLC ("Taxi"), the appellant, obtained a judgment of foreclosure of right of redemption for property known as 123 North Howard Street ("the Property"). More than 30 days after the judgment was entered, the Mayor and City Council of Baltimore ("City"), the

appellee, moved to vacate it for lack of subject matter jurisdiction.

The court granted the City's motion and vacated the judgment. It also ordered the City to repay Taxi the principal sum it had paid for the tax certificate, without interest, costs, or fees. After the court denied a motion for reconsideration, Taxi noted this appeal, raising three questions for review, which we have rephrased and shortened:

I. Was the circuit court's decision to vacate the judgment legally incorrect?

II. Was the circuit court's decision to vacate the judgment an abuse of discretion?

III. Was the circuit court's decision ordering the repayment of principal only legally incorrect?

For the following reasons, we answer "Yes" to Question I and find it unnecessary to address the remaining questions. Accordingly, we shall vacate the order vacating the judgment of foreclosure of right of redemption.

## FACTS AND PROCEEDINGS

On September 26, 2002, in the Circuit Court for Baltimore City, the City filed a petition to condemn three adjacent properties: 123, 125, and 127 North Howard Street. 123 North Howard Street, the Property at issue here, is a vacant lot. The City requested immediate possession and title to the properties, which it planned to use for the Market Center Urban Renewal project.

On the same day, the City filed a petition for immediate possession and title, seeking possession of the leasehold, reversionary, and sub-reversionary interests in the properties as of the retroactive date of August 16, 2002. In addition, the city deposited into court the sum of $600,000, which it alleged was the estimated value of the property interests subject to the condemnation petition. The City further alleged that the offered sum "is subject to the claims of mortgagees, judgment creditors, lienholders, and tenants, if any. . . ."

The court issued an order granting the City immediate possession of the properties retroactive to August 16, 2002, and directing that legal title would vest within ten days after personal service was effected over all the defendants, with no answers being filed.

On November 4, 2002, the defendants, having been served, filed a petition to withdraw the funds that had been deposited into court by the City. The petition alleged that "[t]here are no mortgages or liens which have not been satisfied or which would have priority over [the defendants'] claim to the funds, with the exception of $312.61 due in Municipal liens." The defendants asked that the clerk of court be directed to pay to them, with accrued interest, the sum of $599,687.39 (*i.e.*, the deposited amount minus the $312.61 owed). The petition was signed under oath by the defendants' attorney-in-fact, who attested that the matters and facts set forth in it were "true and correct to the best of my knowledge, information and belief." There was no affirmation based on personal knowledge.

By order of November 27, 2002, the court directed the clerk of the court to make the payments requested, together with a check in the amount of $312.61 to the Director of Finance, for municipal liens. Although it is not absolutely clear from the record, it appears that legal title vested in the City on December 2, 2002. (Legal title clearly vested in the City *after* November 27, 2002.)

Approximately six months later, on May 12, 2003, the City held its 2003 Tax Sale. The Property was included in the 2003 Tax Sale. Taxi purchased the Property from the City for $11,354.88. The certificate of tax sale for the Property states that the $11,354.88 is the amount assessed against Wallace A. Mills "for taxes and other municipal liens due on the property at the time of sale," plus interest, penalties, and expenses. Mills was a record owner of the Property prior to the condemnation action.

On August 3, 2004, in the Circuit Court for Baltimore City, Taxi filed a complaint to foreclose the City's right of

redemption in the Property. It named as defendants the City, the Director of the City Department of Taxes/Tax Collector, and the Property.[1] Taxi alleged, *inter alia,* that a search of the Baltimore City Land Records had identified the City as the record owner of the Property, having acquired title from an assessed owner by condemnation. The affidavit of title search was attached, which showed that title had been conveyed by Wallace A. Mills to the City, effective August 16, 2002.[2]

Taxi properly served the complaint on the City on August 19, 2004. The City did not file a motion or answer or otherwise respond to the suit.

On February 15, 2005, counsel for Taxi filed an "Affidavit of Compliance for the Property Known as 123 N. Howard Street" attesting to service on the City, as the record owner of the Property; notice of the suit to the Tax Collector; posting of the Property by the Sheriff's Office; and publication as required by law. He further attested that the deadline for redeeming the Property, October 5, 2004, had passed, and no party had contacted him about the Property.

On March 7, 2005, the court issued a judgment foreclosing the City's right of redemption in the Property. The judgment ordered the City's Director of Finance to execute a deed to the Property to Taxi. The judgment was entered on March 14, 2005.

On July 5, 2005, the City filed a motion to vacate the judgment, pursuant to Md.Code (1985, 2001 Repl.Vol.), section 14–845 of the Tax–Property Article ("TP"). The City alleged that the May 12, 2003 Tax Sale of the Property was "void *ab initio* since the taxes comprising the sale were already dis-

---

**1.** An action to foreclose right of redemption in property is *in rem,* or *quasi in rem,* and therefore the property at issue is named as a defendant in the complaint. *Hauver v. Dorsey,* 228 Md. 499, 503, 180 A.2d 475 (1962).

**2.** That date is not fully correct. The City took equitable title to the Property on that date, but did not take legal title until sometime after November 27, 2002, most likely on December 2, 2002, as stated above.

posed of by condemnation"; that the tax sale certificate therefore was not valid; and that, consequently, the court had been without subject matter jurisdiction to issue its judgment. The City further alleged that, because there was not a proper tax sale to begin with, and therefore there was no right in the Property to redeem, Taxi was entitled only to the return of the money it paid at the sale, and not to interest, costs, or attorneys' fees.

The City's motion was supported by an affidavit by attorney Andrew Bailey. He attested that he is an Assistant City Solicitor for Baltimore City; that he is "familiar with the condemnation at 123 N. Howard Street"; that "[t]his condemnation occurred in August, 2002, at which time all taxes were disposed of and the City took title"; and "[o]nce title to property is vested in the City, said property is not subject to a Tax Sale." The affidavit was signed under the penalty of perjury and upon the affiant's knowledge, information, and belief. There was no request for a hearing.

On July 27, 2005, Taxi filed an opposition to the motion to vacate. It asserted that taxes had been assessed against the Property as of July 1, 2002, before the City filed its petition for condemnation, and that, in its petition, the City had alleged that "all taxes and other municipal liens and charges will be adjusted to the date that possession is granted to [the City]." Taxi argued that that allegation was an admission that taxes were owed on the Property when the petition was filed; and further pointed out that the order granting the City title to the Property did not say that title was free and clear of all liens. Taxi further asserted that the taxes owed on the Property had remained unpaid and an open lien until it paid them, in the tax sale, on May 12, 2003.

Taxi went on to state that the City had not participated in the foreclosure suit, despite having been properly served, and only filed its motion to vacate judgment after Taxi's counsel contacted the City Solicitor's office to obtain a deed to the Property. Taxi also complained that the City did not submit

any documents or records to support its motion or Mr. Bailey's affidavit. Taxi filed a request for a hearing.

On July 28, 2005, the court issued an order granting the City's motion.[3] The order directed the City to repay Taxi the sum it had paid at the tax sale, without interest, costs, or attorneys' fees.

Within ten days of the entry of that order, Taxi filed a motion for reconsideration. It again asserted that the tax sale certificate for the Property was created as a result of unpaid taxes assessed as of July 1, 2002, and that those taxes had remained a lien against the Property until it was sold at the tax sale on May 12, 2003. It argued that the tax sale certificate, which it had appended to its petition to foreclose right of redemption, was *prima facie* evidence that the taxes had remained unpaid, under TP section 14–823; and that Mr. Bailey's affidavit was legally insufficient to rebut that presumption.

Taxi further argued that, under TP section 14–842, the validity of a tax sale is conclusively established in an action to foreclose the right of redemption, unless the defendant by answer pleads, with particularity, a defense of invalidity of the taxes or the sale, and raises and proves any jurisdictional defect or invalidity. In this case, the City did not file an answer at all.

On August 9, 2005, the City filed a brief reply.

On November 9, 2005, the court entered an order denying the motion for reconsideration. Taxi noted a timely appeal.

## DISCUSSION

Taxi contends the circuit court's decision to vacate the judgment foreclosing the City's right of redemption in the Property was legally incorrect. It argues that, under the Tax Property Article, its certificate of sale was presumptive evi-

---

**3.** Taxi's opposition to the motion to vacate was not timely filed, and it is likely that the court did not see it before it ruled on the motion to vacate.

dence of the validity of the tax sale. Moreover, the validity of the procedure to foreclose the right of redemption was "conclusively presumed," because the City failed to raise the invalidity of the taxes or proceedings as an affirmative defense. It further argues that the City failed to show by clear and convincing evidence that the taxes were paid, as was required for the court to re-open the enrolled judgment.

The City responds that the court properly vacated the judgment. It agrees that it bore the burden of showing, by clear and convincing evidence, that the court had been without jurisdiction to foreclose its right of redemption in the Property. It argues that the affidavit of Mr. Bailey, attesting that he had "handled" the condemnation petition and that all taxes on the Property were "disposed of" at the time of the condemnation, was clear and convincing evidence that the taxes had been paid prior to the 2003 Tax Sale. Citing *Heartwood 88, Inc. v. Montgomery County*, 156 Md.App. 333, 846 A.2d 1096 (2004), the City maintains that, because the taxes had been paid, the tax sale certificate was invalid. *See Bugg v. State Roads Comm.*, 250 Md. 459, 461, 243 A.2d 511 (1968) (stating that a tax sale of property on which taxes have been paid is invalid).

In addition, the City asserts that the Property was placed in the 2003 Tax Sale because four miscellaneous unpaid bills were erroneously assessed against the Property by the City, sometime in November 2002, which (according to the City) was after it had acquired title.[4] The City makes no reference to the record to support this assertion, and indeed none can be made: there is nothing in the record to support it. The City also asserts, again without any reference to or support in the record, that placing the Property in the 2003 Tax Sale was an obvious error on the part of City employees. The City relies upon these unsupported assertions to conclude that the circuit court was without jurisdiction to enter the judgment foreclosing its right of redemption in the Property.

---

4. Again, the City did not obtain legal title to the Property until after November 27, 2002, and most likely not until December 2, 2002.

■ Pursuant to TP section 14–823, in an action to foreclose right of redemption, the certificate of tax sale is "presumptive evidence" of the truth of the statements in the certificate, of the purchaser's title as described in the certificate, and of the "regularity and validity of all proceedings had in reference to the taxes for the nonpayment of which the property was sold and the sale of the property." These presumptions mean that the party attacking the sale must offer evidence to controvert the presumed facts. *Josenhans, Inc. v. Jenkins,* 203 Md. 465, 474, 102 A.2d 257 (1954).

■ In addition, under TP section 14–842, in a proceeding to foreclose right of redemption, the validity of the procedure for the assessment and imposition of the taxes for which the property was sold is "conclusively presumed," unless a defendant "shall, by answer, set up as a defense the invalidity of the taxes or the invalidity of the proceedings to sell or the invalidity of the sale." Moreover,

[a] defendant alleging any jurisdictional defect or invalidity in the taxes or in the proceeding to sell, or in the sale, must particularly specify in the answer the jurisdictional defect or invalidity and must affirmatively establish the defense.

TP § 14–842.

TP section 14–845 specifically addresses the vacation of an enrolled judgment foreclosing the right of redemption in a property. It provides, at subsection (a), that such a judgment may not be reopened, "except on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose ..."[5] *See also Canaj, Inc. v. Baker and Division Phase III,* 391 Md. 374, 426, 893 A.2d 1067 (2006) (observing that the delinquency of property taxes authorizes the sale of the property on which the taxes are owed).

---

**5.** When constructive fraud in the conduct of the proceedings is alleged, such a judgment may only be entertained by the court if the motion to reopen was filed within one year of the date of the judgment. TP § 14–845(a).

■ In the case at bar, there is no allegation of fraud of any sort. Thus, the issue here is whether the circuit court properly vacated the enrolled judgment foreclosing the City's right of redemption in the Property upon clear and convincing proof that the court had been without jurisdiction to enter the judgment in the first place.

*Kaylor v. Wilson,* 260 Md. 707, 273 A.2d 185 (1971), is a pertinent authority on this issue. In that case, in 1967, the plaintiffs filed an action to set aside a 1938 judgment ratifying a tax sale of the property in question. They alleged lack of jurisdiction and fraud. The circuit court found as a fact that the property had been doubly assessed for taxes for the four years preceding the tax sale (1931 to 1934); that the taxes had been fully paid on the property during those years; that the county treasurer therefore had had no authority to sell the property for unpaid taxes, as there were none; and consequently the court had not had subject matter jurisdiction to ratify the unauthorized tax sale of the property. The court vacated the judgment on the ground of lack of jurisdiction.

During the relevant time, a Maryland statute provided that a judgment ratifying a pre–1944 tax sale could not be set aside by any court after June 1, 1966. Md.Code (1957), article 81, § 99A. On appeal, the Court of Appeals assumed, without deciding, that, despite that absolute bar, such a judgment could be vacated for lack of subject matter jurisdiction or fraud.

The Court held that the tax sale challenger must show by clear and convincing evidence *either* such ground. *Kaylor, supra,* 260 Md. at 713, 273 A.2d 185 (stating that "an attack on an enrolled decree or decretal order for lack of jurisdiction or fraud requires clear and convincing proof"). The Court characterized evidence that would meet the clear and convincing standard as "strict proof" amounting to more than "a mere denial even accompanied by inconclusive corroborating testimony." *Id.*

The Court noted that, in putting on their case, the plaintiffs did not rely upon the county treasurer's records, but instead

introduced paid tax bills for the years 1926 and 1969. They did not introduce paid tax bills for the only relevant years— 1931 to 1934. The only testimony presented on the issue of whether the relevant taxes had been paid was that of a grandchild, eight years old in 1931, who made a passing reference to the family's having paid the taxes on the property. Characterizing this evidence as "vague assertions," the Court held that it was insufficient to show that the 1931 to 1934 taxes had been paid. *Id.* at 715, 273 A.2d 185. The Court concluded that the trial judge's factual finding that the taxes for those years in fact had been paid was clearly erroneous.

We likewise conclude, in the case at bar, that, as a matter of law, the City did not offer clear and convincing proof to support its assertion that the taxes on the Property were paid before Taxi purchased it at the 2003 Tax Sale.

Notwithstanding that it would have ready access, the City did not introduce any documentary evidence about the assessment, payment, or non-payment of taxes on the Property prior to the 2003 Tax Sale (or at any time, for that matter). The two items of evidence it submitted in support of its motion to vacate judgment were Mr. Bailey's affidavit, sworn on information and belief, stating that he was "familiar with the condemnation of 123 N. Howard Street" and that "all taxes [for that Property] were disposed of" in August 2002; and the November 4, 2002 petition to withdraw funds, filed by the owners in the condemnation case, attesting that there were no liens on the Property, other than the $ 351.61 in municipal liens.

Mr. Bailey's affidavit testimony that the taxes were "disposed of" is an amorphous, conclusory comment that gives no factual information and appears not to have been made on personal knowledge. It does not disclose:

- the amount of taxes assessed against the Property prior to the 2003 Tax Sale, when that assessment was made, and the identity of the owner or owners of the Property when the assessment was made;

- if the taxes were paid prior to the 2003 Tax Sale, when and how and by whom they were paid;

- whether property taxes still were owed when the City took full title to the Property in late November or early December 2002;

- how the Property came to be included in the 2003 Tax Sale, if the taxes already had been paid before then;

- the significance of the amount of taxes the City alleged were due and owing on the Property when including it in the 2003 Tax Sale.

The petition to withdraw funds is not based on personal knowledge and is likewise conclusory, offering no first-level facts about paid property taxes.

The City also failed to offer any evidence of the four bills that it now claims were issued erroneously and resulted in the Property's being placed in the tax sale. (Indeed, in the proceedings below, including in its motion to vacate, the City made no mention of any erroneously issued bills.)

█ It is impossible to ascertain from the evidence submitted by the City in support of its motion to vacate judgment any *facts* that answer the question whether the taxes for which the Property was sold in the 2003 Tax Sale had been paid before the tax sale took place. The certificate of sale carries with it a presumption that the taxes were validly owed, *i.e.*, that they were unpaid prior to the tax sale. TP § 14–823. That presumption is conclusive, unless the defendant, by answer, challenges the validity of the taxes. TP § 14–842. The City did not do so. Moreover, in moving to vacate the judgment, the City bore the burden of producing clear and convincing evidence controverting the established fact that the taxes had not been paid before the tax sale. Its conclusory evidence offering no first-level facts about the payment or non-payment of the taxes in question was legally insufficient to meet that standard. The City, therefore, failed as a matter of law to meet its burden to show by clear and convincing

evidence that the circuit court lacked jurisdiction to enter the judgment in Taxi's favor.[6]

The City's reliance on *Heartwood, supra,* is misplaced. In that case, Montgomery County mistakenly sold a number of properties at tax sale for which property taxes were not in arrears. Heartwood purchased several of the properties, and was the first to bring to the County's attention that the property taxes for many of them had been paid in full before the tax sale. There was no dispute over that fact, or that the tax sales of those properties were, as a consequence, invalid.

The dispute between the parties concerned the amount of interest Heartwood was entitled to recover on the money it had paid at the tax sale, and whether it was entitled to attorneys' fees. Heartwood took the position that, even though it knew the sales were invalid, it had the right to bring a declaratory judgment action to foreclose the County's right of redemption, and then receive interest at the redemption rate (which is higher than the interest rate otherwise would be) and attorneys' fees. The County's position was that, because the tax sales were invalid, Heartwood was not entitled to bring any action for declaratory judgment or to foreclose right of redemption; and therefore it could not qualify for the redemption interest rate or attorneys' fees.

Upon analyzing the statutory history, this Court agreed with the County's argument. We explained that, for a court to rule a tax sale invalid,

> the tax purchaser must first present to the court a com-
> plaint to foreclose the owner's right of redemption, TP

---

**6.** In Mr. Bailey's affidavit and in the City's brief, there is language suggesting that, once the City acquired title to the Property by condemnation, any taxes owed were automatically abated or forgiven, or taken as paid. The City has not cited any case or statute to support that assertion, nor have we found any. Indeed, *United States v. Certain Parcels of Land in Prince George's County, Md.,* 40 F.Supp. 436 (D.Md. 1941), supports a contrary assertion (holding that, when federal government acquires property through condemnation, it must account for State and local property taxes, interest, and penalties). Here, the City, a local municipality, was collecting property taxes owed not only to it but also to the State.

§ 14–883 et[ ] seq., *and,* in response, the defendant must then file an answer alleging as an affirmative defense the "invalidity of the taxes or the invalidity of the proceedings to sell. . . ." TP § 14–842.

*Heartwood, supra,* 156 Md.App. at 364, 846 A.2d 1096.

Heartwood did not have the right to file a foreclosure action because, as it knew, the taxes on the properties had been paid. Moreover, Heartwood could not represent, as TP section 14–835(a)(3) requires, that "the property has not been redeemed[,]" because it knew that there was no right to redeem to begin with because the taxes had been paid. In addition, the owners had no basis on which to file an answer challenging the validity of the tax sales, as they are required to do (if they are making such a challenge), by TP section 14–842. In essence, we held in *Heartwood* that a tax sale purchaser who learns after the sale but before the redemption period has expired that the tax sale was invalid, when the invalidity is not in dispute, does not have the right to go to court to have the tax sale declared invalid.

In *Heartwood,* the parties were battling over the legal consequences, specifically the repayment of principal and interest, of an invalid tax sale. There was no dispute that the taxes in question had been paid before the tax sale was held. In the instant case, unlike in *Heartwood,* the parties are at odds over the factual question whether the taxes were or were not paid before the tax sale. The parties agree that, if the taxes were paid, the sale was invalid; and if they were not paid, the sale is valid. The question here, not at issue in *Heartwood,* is whether the City's evidence showed, by a clear and convincing standard, that the taxes on the Property were paid before the tax sale, and therefore that the tax sale was invalid.

For the reasons we have discussed above, the City's evidence was legally insufficient to support a finding, by clear and convincing evidence, that the taxes on the Property already were paid when Taxi purchased the Property at the 2003 Tax Sale. On the evidence presented by the City, the

circuit court should have denied the City's motion to vacate the judgment foreclosing its right of redemption in the Property.

**ORDER VACATING JUDGMENT FORECLOSING RIGHT OF REDEMPTION VACATED. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**